KAREN A. CONNOLLY
**KAREN A. CONNOLLY, LTD.**
6600 W. Charleston Blvd., Ste. 124
Las Vegas, NV 89146
Telephone:    (702) 678-6700
Facsimile:    (702) 678-6767
E-Mail:       advocate@kconnollylawyers.com
*Attorney for Daniel James Barnes*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **2:13-CR-00423-1-JCM-GWF** |
| Plaintiff, | **DEFENDANT DANIEL JAMES BARNES' MOTION IN LIMINE TO PRECLUDE EVIDENCE** |
| vs. | |
| DANIEL JAMES BARNES, | |
| Defendant. | |

COMES NOW Defendant DANIEL JAMES BARNES, by and through his counsel, KAREN A. CONNOLLY, and submits this Motion to in Limine to Preclude Evidence.

DATED this _____ day of December, 2014.

**KAREN A. CONNOLLY, LTD.**

KAREN A. CONNOLLY
6600 W. Charleston Blvd., Ste. 124
Las Vegas, NV 89146
Telephone:    (702) 678-6700
*Attorney for Daniel James Barnes*

/ / /

/ / /

/ / /

Motion in Limine.wpd

1

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   Daniel James Barnes ("Barnes") together with co-defendant Amber Lynn Marquardt[1] was

3   charged by way of Criminal Indictment with: Transportation of Minors for Prostitution (Title 18,

4   United States Codes, Section 2423(a)); Trafficking of a Child (Title 18, United States Code, Section

5   1591(a)(1)); and Aiding and Abetting (Title 18, United States Code, Section 2). An Indictment was

6   filed on November 26, 2013.  Undersigned was appointed in February 2014.  A Superceding

7   Indictment was filed on October 15, 2014, which added charges of Sexual Exploitation of a Child,

8   (Title 18, United States Code Section 2251 (a)) and a second count of Aiding and Abetting (Title

9   18, United States Code Section 2).

10   It is anticipated that at trial the government will seek to admit a number of text messages

11   allegedly between Barnes and the victim as well as postings from Facebook and Redbook.com

12   accounts.  All of this evidence should be precluded since it cannot be authenticated, a pre-requisite

13   to its admission.

14   REDBOOK

15   There are Redbook prostitution ads with listed phone number of (209) 354-6449.  Law

16   enforcement searched through Google the number (209) 354-0792.  One ad with an unknown black

17   female had the listed email address paydaboycash@gmail.com.  Records check of that email address

18   through Facebook user data base yielded a user by the name of "Pay Da Boy Kash" and yielded a

19   profile picture of Barnes.

20   Agent Mollica then conducted a Records check for number (209) 354-0792 with Merced

21   Police Department – Barnes had listed phone number of (209) 354-0792

22   The phone number cannot be authenticated as belonging to Barnes.  Moreover, the Redbook

23   ad's cannot be authenticated and thus, are inadmissible.

24   / / /

25   / / /

26   / / /

27   _____

28   [1]   Marquardt is now a cooperating  witness

Motion in Limine.wpd

**TEXT MESSAGES**

There were allegedly text messages sent and received between "YD"[2] and Madison during the period April 20-May 6, 2014.

From Jasmine Madison's phone the government will attempt to introduce text messages it alleges are between Barnes and Madison. Madison has listed in her phone contacts "christy" with a phone number of (209) 354-6449 and "YD" with a phone number of (209) 354-0792. "YD" is alleged to be Barnes. Attached as Exhibit A are text messages bate numbered 000092 - 000108 which the government will seek to introduce. None of these messages can be authenticated.

The government has provided no discovery which would be admissible to prove that the phone number (209) 354-0792 is assigned to Barnes or that "YD" is Barnes. Since this connection cannot be made, the text messages cannot be authenticated.

Authentication of ESI is a relevant and necessary component to the admission of the text messages. By virtue of their portable nature, "[c]ellular telephones are not always exclusively used by the person to whom the phone number is assigned." *Commonwealth v. Koch*, 39 A.3d 993, 1004 (Pa.Super.Ct. 2011). *Koch* was a case of first impression, however, the Court found that the admission of text messages on a cell phone recovered in the possession of the defendant are intrinsic to the cell phone itself only where there is identifying information contained within the text message itself. *Id.* The proponent of evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that the evidence is in fact what it purports to be; rather, they must provide sufficient proof so that a reasonable juror could find that the evidence is what it purports to be. See, *United States v. Hyles*, 479 F.3d 958, 968-69 (8thCir. 2007); *United States v. Tin Yat Chin*, 371 F.3d 31, 37-38 (2nd Cir. 2004).

Authentication of electronic communications may be accomplished through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with other circumstances." Fed. R. Evid. 901(b)(4). In fact, the proponent may authenticate an electronic communication using only circumstantial evidence, including the evidences own unique

---

[2]      The government alleged "YD" is Barnes

Motion in Limine.wpd

KAREN A. CONNOLLY, LTD.
6600 W. Charleston Blvd., Ste. 124,Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767
Karen A. Connolly

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124,Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

1  and distinctive characteristics. *United States v. Smith* 918 F.2d 1501, 1510 (11[th]Cir. 1990). The

2  Eleventh Circuit used this framework to conclusively determine that emails sent from an email

3  address known to belong to the defendant and which reference information that would only be

4  known to the defendant were properly authenticated. *United States v. Siddiqui*, 235 F.3d 1318,

5  1322-23, 55 Fed. R. Evid. Serv. 301, 14 Fla. L. Weekly Fed. C. 285 (11[th]Cir. 2000). Beyond being

6  sent by a distinctive email address admittedly used by the defendant, the authenticated emails in

7  question in *Siddiqui* also referred to the author using a pseudonym known to describe the defendant.

8  *Id.* at 1323.

9      Establishing the identity of the author of a text message through the use of corroborating

10  evidence is critical in satisfying the authentication requirement for admissibility. *Rodriguez v.*

11  *State*, 273 P.3d 845, 849, 128 Nev. Adv. Op. 14 (Nev. 2012). Where there is an objection to the

12  admissibility of the text message, the Nevada Supreme Court has ruled that the proponent of the

13  message must state the reasons for which the message is being offered and provide sufficient direct

14  or circumstantial evidence to authenticate the authorship of the message. *Id.* The identity of a

15  sender of text messages is critical to authentication. *Commonwealth v. Koch*, 39 A.3d at 1004-05.

16  A person cannot be identified as an author of a text message simply because the message was sent

17  from a phone bearing a telephone number assigned to that person because cell phones may be used

18  by individuals other than those to whom the phone is assigned. *Id.* at 1005. Therefore, the Court

19  reasoned that additional evidence is necessary to corroborate the sender's identity. *Id.* Such

20  evidence may include the content of the messages themselves, such as factual information or

21  references unique to the parties. *Id.* at 1004-05. The defendant in *Koch* admitted ownership of a

22  seized cell phone that contained, what was proffered to be, thirteen drug related text messages. *Id.*

23  at 1002. The messages sometimes referred to the defendant in the third person and it was apparent

24  that some had been deleted, therefore the record was not complete. *Id.* at 1003.

25      The government has not even presented any credible evidence that the phone number in

26  question was assigned to Barnes.

27      When attempting to identify the sender based on content and context other Courts have

28  concluded that identifying details that could only have been known by a small group of individuals,

Motion in Limine.wpd

1   any change in the conduct of the parties after the messages were sent, and the use of nicknames in

2   the messages may be sufficient to establish authorship. *Dickens v. State*, 175 Md.App. 231, 927

3   A.2d 32, 36-37 (2007).  Furthermore, where the sender identifies himself such identification may

4   be sufficient to establish authorship. *State v. Taylor*, 178 N.C.App. 395, 632 S.E.2d 218, 230-31

5   (2006).

6        Where prior threats to an individual may be corroborated by extrinsic evidence, threatening

7   text messages containing information that only a small group of individuals could may have known

8   will be admissible and considered authenticated. *Dickens v. State*, 927 A.2d 32, 36 37. (Md. 2007).

9   In *Dickens*, the defendant allegedly sent threatening text messages to his ex-wife.  *Id.*  Those

10   messages referred to the ex-wife, her new boyfriend, and the motel they were staying at with some

11   specificity. *Id.*  The Court determined that based on corroborating evidence from witnesses who

12   testified that the defendant threatened the life of his ex-wife and because only a limited number of

13   people knew that the ex-wife was staying with her boyfriend at a motel, the text messages could be

14   admitted as authenticated.

15        As the *Koch* Court made clear, cellular phones are not always used by a singular individual

16   and therefore the content of those phones cannot be attributed to a singular individual.

17        An owner of a cellular phone has little control over its content when those contents can be

18   received by the phone through no invitation.  There can be no authentication of these text messages,

19   particularly the outgoing text messages.

20        Notwithstanding the lack of evidence, linking Barnes to the phone number, there is no

21   circumstantial evidence existing within the messages themselves which would serve to authenticate

22   them.  None of the text messages contain a distinctive signature line; none of these messages refer

23   to a known alias or nickname used by Barnes.  None of these messages have the ability to be

24   authenticated through their content or other circumstantial evidence because they fail to describe

25   with any specificity the sender or receiver of the messages.

26        The government cannot authenticate text messages sent from a phone allegedly belonging to

27   Barnes.

28   ///

Motion in Limine.wpd

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124,Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

FACEBOOK

In regard to Facebook, although not yet specifically delineated by the government, there are hundreds of Facebook posts/messages/photos some of which Barnes anticipates the government will seek to introduce at trial.

The account cannot be authenticated. Also, many of the photos and conversations took place and/or were posted after the events in question and after Barnes was arrested.

Not only can this form of ESI not be authenticated, it is irrelevant and prejudicial and constitutes illegal character evidence.

The government has not provided IP addresses of other tracking information to demonstrate from where the ads and/or pictures were posted.

Facebook is a social media site that allows its members to create profiles. Each profile is protected by a password. The profiles often contain personal information and pictures. Members can also post status updates that describe their current thoughts or activities. Members can interact with one another in various ways. A member can "like" another member's status update, write on another member's "wall," or send that member a private message through the Facebook site. If Facebook account settings are set to such a feature, Facebook notifies its members through email whenever a member interacts with another member. For example, when one member sends another member a message on Facebook, Facebook automatically sends the receiving member an email to that member's separate email account that informs him or her of the receipt of a message on Facebook. The email also shows him or her the message received.

Facebook messages present unusual authentication problems because account holders often leave their computers or cell phones unattended and remain logged in to their Facebook accounts. *State v. Eleck*, 23 A.3d 818 (Conn. App. Ct. 2011)

The authentication of social media poses unique issues regarding what is required to make a prima facie showing that the matter is what the proponent claims. Creating a Facebook account is easy. Millier, Samantha L., Note, The FaceBook Frontier: Responding to the Changing Face of Privacy on the Internet, 97 Ky. L. J. 541, 544 (2008-09). "[A]nyone at least thirteen years old with a valid e-mail address could create a profile." Petrashek, Nathan, The Fourth Amendment and the

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

Motion in Limine.wpd

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

1  Brave New World of Online Social Networking, 93 Marq. L. Rev. 1495, 1506 (Summer 2010).  To

2  create a profile, a person must go to www.facebook.com, enter his or her full name, birth date, and

3  e-mail address, and register a password.  Facebook then sends a confirmation link to the registered

4  e-mail, which the person must click on to complete registration.  Millier, 97 Ky. L. J. at 544.  Not

5  only can anyone create a profile and masquerade as another person, but such a risk is amplified

6  when a person creates a real profile without the realization that third parties can "mine" their

7  personal data.  Id. at 542.  Friends and strangers alike may have "access to family photos, intimate

8  details about one's likes and dislikes, hobbies, employer details, and other personal information,"

9  and, consequently, "the desire to share information with one's friends may also expose users to

10  unknown third parties who may misuse their information."  Id. at 542-43 (describing a study done

11  by an internet security company using "Freddi Staur," a toy frog with a Facebook account, who

12  "friended" several people on Facebook and was able to access their personal information).  Thus,

13  concern over authentication arises "because anyone can create a fictitious account and masquerade

14  under another person's name or can gain access to another's account by obtaining the user's

15  username and password," and, consequently, "[t]he potential for fabricating or tampering with

16  electronically stored information on a social networking sight" is high, and poses challenges to

17  authenticating printouts from the website.  Griffin v. State, 19 A.3d 415, 421-22 (Md. 2011); see

18  also, Eleck, 23 A.3d at 822 ("an electronic communication, such as a Facebook message, . . . could

19  be generated by someone other than the named sender"); Campbell v. State, 382 S.W.3d 545, 550

20  (Tex. App. 2012) ("Facebook presents an authentication concern that is twofold. First, because

21  anyone can establish a fictitious profile under any name, the person viewing the profile has no way

22  of knowing whether the profile is legitimate.  Second, because a person may gain access to another

23  person's account by obtaining the user's name and password, the person viewing communications

24  on or from an account profile cannot be certain that the author is in fact the profile owner.")

25  (internal citations omitted).

26       Because of the special concerns regarding fabrication, "the fact that an electronic

27  communication on its face purports to originate from a certain person's social networking account

28  is generally insufficient standing alone to authenticate that person as the author of the

Motion in Limine.wpd

1  communications." *Campbell*, 382 S.W.3d at 550 (citing *Tienda v. State*, 358 S.W.3d 633 (Tex.

2  Crim. App. 2012) ("That an email on its face purports to come from a certain person's email

3  address, that the respondent in an internet chat room dialogue purports to identify himself, or that

4  a text message emanates from a cell phone number assigned to the purported author - none of these

5  circumstances, without more, has typically been regarded as sufficient to support a finding of

6  authenticity.")  The ease with which defendants and alleged victims alike could fabricate a social

7  media account to corroborate a story necessitates more than a simple name and photograph to

8  sufficiently link the communication to the purported author.  The court in *Tienda* surveyed cases

9  and noted what that "something more" may be necessary to adequately present a prima facie case

10  of authentication.  *Tienda*, 358 S.W.3d at 639-41.  For example, the purported sender admits

11  authorship, the purported sender is seen composing the communication, business records of an

12  internet service provider or cell phone company show that the communication originated from the

13  purported sender's personal computer or cell phone under circumstances in which it is reasonable

14  to believe that only the purported sender would have access to the computer or cell phone, the

15  communication contains information that only the purported sender could be expected to know, the

16  purported sender responds to an exchange in such a way as to indicate circumstantially that he was

17  in fact the author of the communication, or other circumstances peculiar to the particular case may

18  suffice to establish a prima facie showing of authenticity. *Id.*; see also *Griffin*, 19 A.3d at 427-28

19  (social media may be authenticated by testimony from the purported author, by searching the

20  purported author's computer and examining the computer's internet history and hard drive, or by

21  obtaining information directly from the social networking website that links the profile and posting

22  to the purported author); *Commonwealth v. Williams*, 926 N.E.2d 1162, (Mass. 2010) (social media

23  was not properly authenticated where there was no testimony "regarding how secure such a Web

24  page is, who can access a Myspace Web page, whether codes are needed for such access, etc.").

25       In *Eleck*, the defendant sought to impeach a state witness with a Facebook message purporting

26  to be from the witness. *Eleck*, 23 A.3d at 820.  The message was from a Facebook account bearing

27  a user name matching the name of the witness.  *Id.*  The defendant testified that the account profile

28  contained photographs and other entries identifying the witness as the holder of the account, and

Motion in Limine.wpd

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

1  that after the witness testified, the account had removed the defendant as a "friend." *Id.* at 821. The

2  messages also contained a vague statement that the "past is the past," which the defendant argued

3  was a reference to the assault he was alleged to have committed. *Id.* at 820 n.2, 824. The witness

4  testified that the Facebook account was indeed hers, but she denied sending the messages, testifying

5  that someone had "hacked" into her Facebook account two to three weeks prior, and had changed

6  her password such that she had subsequently been unable to access it. *Id.* at 820. The court held

7  that, although the suggestion that the witness did not author the messages because the account was

8  "hacked" was "dubious under the particular facts at hand, given that the messages were sent before

9  the alleged hacking of the account took place, [the witness'] testimony highlights the general lack

10 of security of the medium." *Id.* at 824. Thus, the court found that the defendant did not offer the

11 proper foundational proof to authenticate that the messages came from the witness, and not simply

12 from her Facebook account. *Id.*

13      In *United States v. Jackson*, the defendant attempted to introduce website postings from two

14 white supremacist websites to exonerate herself, in an attempt to prove that these white supremacist

15 groups, and not the defendant, sent the racist hate mail that the defendant was accused of sending.

16 *United States v. Jackson*, 208 F.3d 633, 636-37 (7th Cir. 2000). The court stated that to authenticate

17 the website postings, the defendant "needed to show that the web postings in which the white

18 supremacist groups took responsibility for the racist mailings actually were posted by the groups,

19 as opposed to being slipped onto the groups' web sites by [the defendant] herself, who was a skilled

20 computer user." *Id.* at 638. The court found that the defendant was unable to so authenticate the

21 website postings. *Id.*

22      Similarly, in this case, the government cannot make a prima facie case that the Facebook

23 profile belonged to Barnes.

24      Evidence that the defendant's name is written as the author of an e-mail or that the electronic

25 communication originates from an e-mail or a social networking Web site such as Facebook or

26 MySpace that bears the defendant's name is not sufficient alone to authenticate the electronic

27 communication as having been authored or sent by the defendant. See *Commonwealth v. Williams*,

28 456 Mass. 857, 868–869, 926 N.E.2d 1162 (2010). There must be some "confirming

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd. Ste. 124.Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

Motion in Limine.wpd

9

1  circumstances" sufficient for a reasonable jury to find by a preponderance of the evidence that the

2  defendant authored the e-mails. See *Commonwealth v. Hartford*, supra at 488, 194 N.E.2d 401.

3         Even if they are authenticated, the Facebook information is irrelevant and prejudicial.

4         Evidence is not admissible unless it is relevant. Fed. R. Evid. Rule 402. Relevant evidence

5  is any evidence having a tendency to make the existence of a fact of consequence to the

6  determination of the action more or less probable than it would be without the evidence. Fed. R.

7  Evid. 401.

8         Fed. R. Evid. Rule 401. Relevancy is not an inherent characteristic of any item of evidence

9  but exists only as a relation between an item of evidence and a matter properly provable in the case.

10 Since the Facebook discovery provided post dates after the incident in question it is irrelevant.

11        Even if relevant, evidence may be excluded if its probative value is substantially outweighed

12 by the danger of unfair prejudice. Fed. R. Evid. Rule 403. Arguing, innuendo, that the Facebook

13 information is relevant, the admission should be deemed disproportionate and certainly constitute

14 unfair prejudice. Where evidence makes a conviction more likely because it provokes an emotional

15 response from the jury, the evidence may be found unfairly prejudicial. *Harry*, 2013 WL 684646,

16 20 (citing *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999)).

17        Character evidence is not admissible for the purpose of proving that an individual acted in

18 conformity with that character trait on a particular occasion. Fed. R. Evid. 404(a). This rule is

19 necessary because character evidence inheres the highest degree of prejudice and courts are

20 unwilling to permit a jury to even infer that an individual performed a specific act based upon a

21 particular alleged character trait. *U.S. v. Harry*, 2013 WL 684646, 21 (D.N.M. 2013) (citing *Perrin*

22 *v. Anderson*, 784 F.2d 1040, 1044 (10th Cir. 1986) (citing Fed. R. Evid. Rule 404 advisory notes).

23 The Court in *Harry* refused to admit seemingly incriminating text messages sent by the defendant

24 to demonstrate character unless the defendant opened that door during trial. *Id*. at 22. The Court

25 found that the messages could be admitted pursuant to another permissible purpose under Rule 404,

26 such as motive, intent, lack of mistake, or state of mind. *Id*

27        Rule 404(b) of the Federal Rules of Evidence provides that "the prosecution in a criminal case

28 shall provide reasonable notice in advance of trial . . . of the general nature of any [Rule 404(b)]

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

Motion in Limine.wpd

1    evidence it intends to introduce at trial." Fed. R. Evid. 404(b). To date, the government has not

2    specifically delineated what specific Facebook posts out of thousand it will seek to use as 404(b)

3    evidence.  Therefore, a general objection to Facebook as 404B evidence is made. Also, since there

4    as been no notice to date, no 404 (b) notice has been provided for a trial scheduled to commence

5    on December 15, 2014. Failure to provide notice or obtain an excuse from the district court, renders

6    the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-in-chief

7    or for impeachment." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999) (conviction

8    vacated and remanded for government's failure to comply with the Rule 404(b) notice requirement).

9           Because the government has yet to provide its Rule 404(b) notice, Mr. Barnes is unable to

10   address any specific Facebook posts.  Barnes respectfully moves this court for an order excluding

11   the introduction of all evidence pertaining to bad acts that do not appear on the face of the

12   indictment and/or is unduly prejudicial pursuant to Rules 404(b) and 403.  It is anticipated that the

13   government will seek to use images and posts from the Facebook account to portray Barnes in a

14   negative light.

15          Rule 402 of the Federal Rules of Evidence states, "[e]vidence which is not relevant is not

16   admissible." Fed. R. Evid. 402. Rule 401 defines "relevant evidence" as "evidence having any

17   tendency to make the existence of any fact that is of consequence to the determination of the action

18   more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if

19   evidence may be relevant, Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not

20   admissible to prove the character of a person in order to show action in conformity therewith." Fed.

21   R. Evid. 404(b). Rule 404(b) allows admission of such evidence if the government can establish it

22   goes to other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge,

23   identity or absence of mistake, provided the government gives notice of its intent to use such

24   evidence for a sanctioned purpose. Id. While Rule 404(b) has been characterized as a "rule of

25   inclusion," the Ninth Circuit generally disfavors admitting other act evidence. See *United States v.*

26   *Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995) ("[E]xtrinsic acts evidence is not looked

27   upon with favor") (quoting *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993)); *United*

28   *States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (same).

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

Motion in Limine.wpd

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

1    The limitations of Rule 404(b) are "designed to avoid a danger that the jury will punish the

2    defendant for offenses other than those charged, or at least that it will convict when unsure of guilt,

3    because it is convinced the defendant is a bad man deserving of punishment." *United States v. Hill*,

4    953 F.2d 452, 457 (9th Cir. 1991) (internal quotation marks and citations omitted); see also *United*

5    *States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) ("Because evidence of other crimes, wrongs, or

6    acts carries with it the inherent potential to see the defendant simply as a bad person and convict

7    because of who he is rather than what he did, a trial court must take appropriate care to see that this

8    does not happen); *Mayans*, 17 F.3d at p. 1181(noting "'our reluctance to sanction the use of other

9    acts evidence stems from the underlying premise of our criminal justice system, that the defendant

10   must be tried for what he did, not for who he is.'") (quoting *United States v. Bradley*, supra, 5 F.3d

11   at p. 1320).

12       In *Mayans*, the Ninth Circuit outlined a four-part test for admissibility under Rule 404(b).

13   Evidence of prior acts and crimes may be admitted if: (1) the evidence tends to prove a material

14   point; (2) the prior act is not too remote in time; (3) there is sufficient evidence to support the

15   assertion that the defendant committed the act in question; and (4) in cases where knowledge or

16   intent are at issue, the act must be similar to the one charged. *Mayans*, 17 F.3d at 1181. The burden

17   of proving that the evidence meets these requirements rests on the Government as the proffering

18   party. *Id.* at 1183.

19       Even if the court finds that the evidence meets this test, it must still assess the probative value

20   of the evidence against the preclusive factors of Rule 403 of the Federal Rules of Evidence.  See

21   *Old Chief v. United States*, 519 U.S. 172, 182 (1997) (other act evidence is subject to Rule 403

22   balancing test "for relative probative value and for prejudicial risk of misuse as propensity

23   evidence"); *Mayans*, 17 F.3d at 1183; *Bradley*, 5 F.3d at 1320. Rule 403 states relevant evidence

24   may be excluded "if its probative value is substantially outweighed by the danger of unfair

25   prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste

26   of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The burden is on the

27   Government, as the proffering party, to show that the probative value of the evidence is not

28   substantially outweighed by the danger of unfair prejudice to the defendant. *United States v*

Motion in Limine.wpd

1  *Conners*, 825 F.2d 1384, 1390 (9th Cir. 1987). Moreover, "'[w]here the evidence is of very slight

2  (if any) probative value . . . even a modest likelihood of unfair prejudice or a small risk of

3  misleading the jury will justify excluding that evidence." *United States v. Espinoza-Baza*, – F.2d

4  –, 2011 WL 3332518, at *4 (9th Cir. Aug. 4, 2011) (quoting *United States v. Hitt*, 981 F.2d 422,

5  424 (9th Cir. 1992)).

6                                    **CONCLUSION**

7         Admission of the text messages in this case would constitute admission of electronically

8  stored information (ESI).  Based on the foregoing, the text messages in this matter cannot be

9  considered (1) relevant, (2) authentic, or (3) non-hearsay or admissible under a hearsay exception

10  in accordance with *Lorraine*.  Furthermore, the very nature and content of the messages suggests

11  that their probative value is substantially outweighed by their potential to incite unfair prejudice.

12  Finally, certain messages are impermissible character evidence that must be excluded. For these

13  reasons Defendant Barnes respectfully requests that text messages bate numbered 000092 - 000108

14  not be allowed as admissible evidence in this case. Redbook is out of business and the Redbook ad

15  which is the basis for count 2 of the in Superceding Indictment cannot be authenticated.  For the

16  reasons set forth herein above, Facebook post allegedly attributed  to Barnes should be precluded

17  as unauthenticated

18         DATED this ____9____ day of December 2014.

19                                          KAREN A. CONNOLLY, LTD.

20

21                                          _____

22                                          KAREN A. CONNOLLY
                                            6600 W. Charleston Blvd., Ste. 124

23                                          Las Vegas, NV  89146
                                            *Attorney for Daniel James Barnes*

24  / / /

25  / / /

26  / / /

27

28

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

Motion in Limine.wpd

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of KAREN A. CONNOLLY, LTD., and on the 9ᵗʰ day of December 2014, I served a true and correct copy of ***Defendant Daniel James Barnes' Motion in Limine to Preclude Evidence*** by electronic mail, pursuant to the NEF-AC, to the following parties at interest:

Daniel G. Bogden, United States Attorney
Sean C. Jones, Assistant US Attorney
Email: sean.jones@usdoj.gov
Crane Pomerantz, Assistant US Attorney
Email: crane.pomerantz@usdoj.gov

David T. Brown
*Attorney for Defendant Amber Lynn Marquardt*
Email: master@brownlawlv.com

an Employee of KAREN A. CONNOLLY, LTD.

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124 Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

Motion in Limine.wpd

# EXHIBIT "A"





000092





000093





















000099





000100

















000105







