```
               IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF NEVADA

UNITED STATES OF AMERICA,    )
                             )    Case No. 2:13-cr-423-JCM-GWF
          Plaintiff,         )
                             )    Las Vegas, Nevada
     vs.                     )    April 4, 2016
                             )    11:15 a.m.
DANIEL JAMES BARNES,         )
                             )    Day 1
          Defendant.         )    Opening Statements
_____)

               PARTIAL TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JAMES C. MAHAN
         UNITED STATES DISTRICT COURT JUDGE AND A JURY


APPEARANCES:

For the Government:

          ALLISON HERR
          CHRISTINA SILVA
          Assistant U.S. Attorneys
          District of Nevada
          333 Las Vegas Boulevard So.
          Las Vegas, Nevada 89101

For the Defendant:

          LUCAS GAFFNEY
          JAMES A. ORONOZ
          Oronoz, Ericsson & Gaffney LLC
          1050 Indigo Drive, Suite 120
          Las Vegas, Nevada 89145




Court Reporter:  Katherine Eismann, CSR, CRR, RDR
                 (702)431-1919  eismann.csr@gmail.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

1            (Monday, April 4, 2016, 11:15 a.m.)
2                          --oOo--
3                    P R O C E E D I N G S
4       (Jury out.)
5            THE COURT: Okay. Thank you. We are in session
6  outside the presence of the jury. You can be seated. Thank
7  you. I'm sorry.
8            Now, how long are you going to be with your opening
9  statement, Miss Herr?
10           MS. SILVA: Your Honor, I will be giving the opening.
11 I anticipate it to be five, seven minutes at the most.
12           THE COURT: Mr. Gaffney?
13           MR. GAFFNEY: Mine is going to be very brief. Two
14 minutes maybe.
15           THE COURT: Okay. I mean, so now we are at the
16 point -- what witnesses do you have to call today?
17           MS. HERR: Well, Your Honor, I guess two.
18           THE COURT: Today is the day set for trial. We are
19 here. We are ready to go. We have got a jury. We empaneled
20 the jury.
21           MS. HERR: Your Honor, let me start with two
22 different things. First, in answer to your question, there's
23 one outstanding pretrial motion that deals with the use of
24 custodian of records affidavits.
25           We had filed a motion. We didn't receive any

1 clarification from you on whether that was going to be
2 acceptable.
3       THE COURT: Because it's not a motion. You filed a
4 notice, I believe.
5       MS. HERR: That is correct, Your Honor.
6       THE COURT: Okay. So it's not a motion, so there is
7 nothing I had to do. If you were waiting to hear from me -- so
8 I should say something about your notice? I have got enough to
9 hear cases and to decide actual motions rather than to decide a
10 notice. I don't know how I would decide a notice, but --
11       MR. GAFFNEY: And Your Honor, if I might. We do have
12 a couple of objections to their notice. There are a couple of
13 hotel registration receipts that they are trying to bring in.
14 Specifically, one is for America's Best Value Inn. Another one
15 is for the California Inn.
16       These are records that I also subpoenaed, but due to
17 some -- I don't know -- misunderstanding, the custodians did
18 not forward me the records.
19       And maybe the government can inform you a little bit
20 more about what happened there. So, as to those two specific
21 records, we would be exercising the Sixth Amendment right to
22 have them come in and authenticate what those records are.
23       And in addition, as to the America's Best Value Inn,
24 one of them has a note from the clerk saying something along
25 the lines of "There's a hooker in the room. Do not renew." I

1  believe, essentially, that that could be a -- it's more
2  prejudicial than probative.
3              THE COURT:  Gee, you think?
4              MR. GAFFNEY:  Absolutely.  And so we should have the
5  right to cross-examine the clerk who generated that or the
6  custodian of record.
7              THE COURT:  But it would have to be excised or
8  something.  I'm not going to allow the record to come in like
9  that.
10             MR. GAFFNEY:  Okay.  It is in the government's
11 exhibit book.  I don't remember exactly which exhibit it is.
12 It looks like it would be Exhibit No. 15.
13             THE COURT:  But I'm probably inclined to overrule
14 your objection, I mean, because you wanted these exhibits
15 yourself; right?
16             MR. GAFFNEY:  Well, we wanted -- I did want the --
17 the exhibits and the records, and that's why we subpoenaed
18 them.  And it's my understanding that when we sent our
19 subpoena, Mr. Barnes had also sent a later requesting those
20 records.
21             The custodians of these hotels contacted the
22 government and said, "What do what we do with this informal
23 request?"  The government said, "You don't have to abide by
24 that informal request."
25             They confused that with my subpoena, so I never

1  received these records.

2  THE COURT: All right. I mean, you want to put them
3  in evidence there, you know, I'm inclined -- if it's just
4  something you want to use, both sides want to use, I would be
5  inclined to admitted it over your objection.

6  But I'm not going have something that's got a comment
7  on it, like, "Hooker in the room," or, you know, or "drinks too
8  much," or "makes too much noise," or whatever. That's a
9  hearsay comment.

10  MR. GAFFNEY: Right.

11  MS. HERR: Your Honor, I have no objection to
12  redacting it. I simply didn't want to change it, since it was
13  pursuant to the custodian of records affidavit, I didn't feel
14  comfortable making that modification. But I would certainly --

15  THE COURT: Well, white it out or something and show
16  to it us, and we'll decide. But, I mean, I'm inclined -- you
17  know, today is the day for trial. Let's go.

18  MR. GAFFNEY: Your Honor, there was one other issue.

19  THE COURT: Sure.

20  MR. GAFFNEY: One other defense issue. We had filed
21  a motion to ask the case agent -- request the Court to have the
22  case agent testify first. That was denied. We understand the
23  Court's ruling.

24  However, it appears -- oh, is the -- he was just here
25  for jury selection?

1           Okay.  I'm sorry, Your Honor.  That's moot.  I
2  thought they were going to have two case agents.  Looks like
3  they just have Agent Mollica there with them.
4           MS. SILVA:  That's correct, Your Honor.
5           THE COURT:  All right.  But, I mean you've got to --
6  you don't have --
7           MS. HERR:  Your Honor, I have six witnesses who are
8  available to testify today.  So I'm prepared to move forward
9  with trial if that's the ruling of the Court.
10          THE COURT:  It seems like we've got to do that and,
11 you know, see where we go.  You don't have your main -- is she
12 your main witness or your victim witness, if I can call her
13 that?  But, I mean, today is the day.
14          MS. HERR:  And we appreciate that, Your Honor.
15 Again, we are trying to weigh the varying issues.  We
16 appreciate that we don't want to impede the jury moving
17 forward.  However, she is a critical witness.
18          She was properly served prior to trial.  After being
19 served with notice, she then noticed us, on Thursday evening,
20 that she did not intend to comply with that subpoena and was
21 attempting to flee the jurisdiction.
22          We, as Miss Silva indicated earlier, have moved
23 forward very quickly to obtain warrants and do what we can to
24 try and secure her presence here, understanding that we were
25 not able to get those until Friday afternoon.

1     And we have to rely on a telephone service to
2 actually get that pinging to take place in order to locate her.
3 That has left us very little time to be able to get that
4 accomplished.
5     THE COURT: I understand. But, I mean, you know,
6 it's unfortunate, but, you know, today's the day.
7     MS. HERR: Understood, Your Honor. We will proceed
8 then.
9     THE COURT: Okay. All right. So let me get off the
10 bench, and we will bring them in. They don't need to know what
11 we are talking about.
12    (Recess, 11:21 a.m. Resumed 11:24 a.m. Jury in.)
13     THE COURT: All right. Thank you. You may be
14 seated.
15     Parties stipulate to the presence of the jury and the
16 alternates?
17     MR. GAFFNEY: Yes, Your Honor.
18     THE COURT: All right. Thank you.
19     Did the government say yes? I'm sorry.
20     MS. HERR: Yes, Your Honor.
21     MS. SILVA: Yes, Your Honor.
22     THE COURT: Okay. All right.
23     Ladies and gentlemen, I'd like to explain to you
24 briefly. First of all, you've got the jury room. Did you --
25 if you looked in the refrigerator, there are drinks in there

1   for you and your precious government water.  Again, you can
2   bring it from home.  And then in the morning, if you would come
3   in about 8:30.
4           The first one in, make coffee with the reverse
5   osmosis faucet.  And enjoy the doughnuts, and we will start at
6   9:00 each morning.  All right?
7           All right.  Ladies and gentlemen, I'd like to briefly
8   explain to you the proceedings you are about to witness.  You
9   as, the jurors, will, at the conclusion of the evidence,
10  determine the facts in the case, apply to those facts the law
11  as I give to you, and on that basis reach a verdict consistent
12  with the facts and the law.
13          Part of what you do is to determine the credibility
14  of witnesses.  So observe carefully each witness as he or she
15  testifies and consider carefully all of the evidence as it is
16  presented.
17          It's up to you to determine how much weight to give
18  anybody's testimony.  You may say, "We'll give it some weight,
19  a lot of weight, or no weight at all."  That's up to you.
20          If I should sustain an objection to the -- to any
21  evidence, please don't infer any bias on my part or speculate
22  about I'm trying to send you a secret signal or something.  I'm
23  not.  I'm simply making an evidentiary ruling, and that's all
24  I'm doing.
25          If the testimony of a witness is -- I'm sorry.  If an

1   objection is sustained by me -- in other words, if one of the
2   attorneys asks a question and I sustain an objection to that
3   question, please don't speculate about what the answer might
4   have been.
5           Remember that the arguments of the attorneys, the
6   questions they ask are not evidence.  So don't give them any
7   weight at all.
8           Plus, some questions are just inherently unfair.  You
9   know, if I ask a question, "Have you stopped cheating on your
10  wife?  Answer yes or no?"
11          You see, it's an unfair question, because if the
12  person -- if the witness answers "Yes," that means that he
13  shopped cheating, so he was cheating on her.  If he says, "No,"
14  that means he's still cheating on her.  And, in fact, neither
15  one may be the truth.
16          So you understand?  Some questions are simply
17  inherently unfair.  So if I sustain an objection to a question,
18  don't say, "Gee, I wonder what the answer might have been?"
19  Don't speculate about it.  Don't think about it.
20          And again, don't assume just because a question is
21  asked that it's based on facts.  It may simply be based on
22  arguments or the attorney's perception of the something.  So
23  the questions have absolutely no evidentiary value.
24          During the course of the trial, matters may arise
25  that we have to cover outside your presence.  If that's the

1 case, I'll either do it at sidebar -- and we have got the
2 classical music now. Right, David?
3     COURTROOM ADMINISTRATOR: Yes, Your Honor.
4     THE COURT: Okay. Until I came up with that CD,
5 there was -- there was white noise, you know, which is like
6 just static on the radio, which is really thrilling for the
7 jury to sit and listen to that.
8     But it doesn't matter what it is. I will try to keep
9 those as short as possible. And if it's going to be something
10 of any length, I will just excuse you and send you out, so you
11 can at least be comfortable, you know, and use the restroom or
12 whatever. Sit and relax rather than just be over here. We'll
13 be over at sidebar and you sit in the jury box there.
14     All right. Your verdict in the case is to be based
15 only on the testimony and other evidence that is presented in
16 the courtroom and not on anything that occurs outside of this
17 room.
18     So, accordingly, you are not to visit any site or
19 location that may be described by witnesses. You are not to
20 conduct any experiments, and you are not to perform any
21 research on any subject connected with the case.
22     Let the attorneys present the evidence to you and
23 base your verdict -- all of you base your verdict on the same
24 evidence, the evidence you see here in court.
25     You've been provided with pencil and paper to take

1   notes.  Again, take -- take as many notes as you want or as few
2   as you want.  And as I told you before, don't give anyone's
3   notes undue influence.  Remember, the notes are simply a means
4   of helping somebody refresh their memory, and that's all it is.
5           So the notes may be inaccurate.  You don't know how
6   good a note-taker that other juror is.  And let's face it.  We
7   all make mistakes sometimes.  And you put "yes" or meant "no,"
8   or you write something down wrong.  Or you can't read your
9   writing or whatever.  So don't give any weight to anybody's
10  notes.  Rely on your own memory.
11          Again, if any questions -- any factual questions
12  occur to you that the attorneys are not asking, you can write
13  it out on a piece of paper, hand it to my law clerk.  He'll
14  hand it to me, and if it's appropriate, I'll see it gets
15  answered.  If it's objectionable, I won't get it answered.
16          And after the trial is over, I always talk to the
17  jury for a few moments, and I can explain to you then why it
18  was objectionable.
19          Let's see.  All right.  We have reached the stage in
20  the proceeding where the attorneys may make their opening
21  statements.  The law provides that the attorney for the
22  government goes first.  And then the defendant may --
23  defendants' attorney may make an opening statement at that time
24  or may reserve the right to do it later in the trial.  And
25  we'll see what they decide to do.

1       So, Miss Herr, are you going to do the opening
2  statement?
3       MS. HERR:  No, Your Honor.  Miss Silva will be doing
4  that.
5       THE COURT:  All right.  Miss Silva.
6       MS. SILVA:  Thank you, Your Honor.
7       THE COURT:  Yes, ma'am.
8       One other thing before you start.  I'm sorry.  You've
9  got your note papers.  I take my notes on the computer here, so
10 I'm going to be up here tapping away.  If you wonder what I'm
11 doing, I'm taking my notes on the trial.
12      So just this is part of technology.  So, all right.
13      Go ahead now, Miss Silva.  Thank you.
14           GOVERNMENT'S OPENING STATEMENT
15      MS. SILVA:  Thank you, Your Honor.
16      May it please the Court, opposing counsel.  Good
17 morning ladies and gentlemen of the jury.
18      My name is Cristina Silva, and I'm one of the
19 prosecutors for the United States.  I'll be trying this case
20 today with my co-counsel, Miss Herr.
21      The facts of this case are going to take you back to
22 late spring and summer of 2013.  Perhaps when you were a
23 teenager, that time of year associated with things like the
24 last school bell ringing for the end of the school year, or the
25 smell of fresh cut grass, or the thrill of jumping into the

1    pool for your first swim after school ends.

2             That was not the dreams, the reality, or the life of

3    a 15-year-old victim in this case, Jasmin Madison.  Instead,

4    15-year-old Jasmin Madison was not doing any of those things.

5    Instead, she was working as a prostitute for that man, the

6    defendant, Daniel Barnes.

7             15-year-old Jasmin Madison was recruited by the

8    defendant and another woman who worked for him, who also worked

9    as a prostitute for him, to work as a prostitute.

10            The other woman, Amber Marquardt, had a long-term

11   relationship with the defendant.  And during that long-term

12   relationship, she also was sex trafficked by him.

13            Between Las Vegas and California, you will hear that

14   she repeatedly sold her body for money, and the proceeds of

15   that money went directly to the defendant.

16            His acts didn't stop there.  They were directed at

17   the victim.  The victim in this case also sold her body for

18   money, and that money was given to the defendant.

19            The defendant is charged with four separate counts in

20   the superseding criminal indictment.  He is charged with

21   conspiracy to commit sex trafficking of a minor, sex

22   trafficking of a minor, transportation of a minor for

23   prostitution, and conspiracy to commit sexual exploitation of a

24   child, also known as production of child pornography.

25            At the end of the trial, you are going to hear

1  specifically what elements we have to prove for you to convict
2  the defendant on all counts beyond a reasonable doubt.  The
3  judge will instruct you of those elements.
4          In the course of this trial, the evidence will prove
5  that the defendant is in fact guilty of each of the counts
6  charged.
7          The evidence in this case will comprise of testimony
8  from various witnesses as well as physical evidence.  You are
9  going to hear from the prostitute who also worked for the
10 defendant, Amber Marquardt.  She has already pled guilty to
11 crimes associated with this particular case.
12         And she's going to tell you what happened in that
13 late spring and early summer of 2013 when Jasmin Madison was
14 picked up, by herself and the defendant, and driven from the
15 streets of Las Vegas to the streets of California, where they
16 checked into various motels so Jasmin as well as Amber could
17 "catch dates."
18         I put that in quotes, because you are going to hear
19 testimony as to what "dates" mean in the underworld of sex
20 trafficking.  Dates mean a random individual to have sex with.
21         You are going to hear about how every time they made
22 that money, it went to the defendant.  That way the defendant
23 could continue to support their ongoing trafficking efforts,
24 where they go from place to place to sell their body.
25         The facts are going to show that Amber met the

1    victim, Jasmin, in a hotel here in Las Vegas. And after
2    meeting her, they brought her back to the hotel room and got to
3    know her. Introduced her to the defendant.
4              And at the instruction of the defendant, they took
5    pictures of her. And not pictures you would imagine a 15 year
6    old you see today, that being selfies or, you know, group
7    pictures. No. Naked pictures. Sexual pictures. Pictures of
8    a 15 year old's vagina and buttocks.
9              But it wasn't just taking of the pictures that
10   happened. Instead, after taking those pictures, on the road
11   between Las Vegas and California, where they were going to
12   conduct more acts of prostitution, those photographs were
13   uploaded onto the Internet on a website called myredbook.com, a
14   website that he was known for prostitution.
15             Those pictures are on the Internet for everyone to
16   see for individuals to try and get a date with this 15-year-old
17   girl.
18             After finishing multiple acts of prostitution in
19   California, you are going hear that they came back to Las
20   Vegas. You are going to hear, at some point, the victim left
21   the defendant. And it wasn't until months later that the
22   victim was contacted by law enforcement; and, ultimately, an
23   investigation ensued which led to the discovery of this man and
24   the other woman, Amber Marquardt.
25             That evidence that's going to come into the course of

1  this trial includes phone records, pictures, information about
2  that posting on myredbook.com.  You are also going to hear
3  about some of the words the defendant himself wrote during --
4  that was discovered during this investigation.
5              Because while his prostitutes were working for him
6  and selling their bodies and making money, the defendant was
7  hanging out writing raps.  Some of those raps really speak to
8  the heart of this case.  "Pimpin's my occupation.  I'm a
9  professional.  Pimpin's my occupation."
10             During the course of this case, you are going hear
11 that the defendant was loud and proud about the work that he
12 did.  Loud and proud about the fact that he put women to work
13 to sell their bodies every day, and he did it for years.
14             You are going to hear about how he loud and proudly
15 put these women, who were young women, out onto the streets and
16 provided them with condoms in order to protect themselves while
17 they were engaging in sex acts.  You are going see the pictures
18 of the 15-year-old victim posted on the Internet for all to
19 see.
20             In the end, ladies and gentlemen, I'm confident that
21 you -- after careful consideration of all the evidence, you
22 will find the defendant guilty of all four counts of the
23 indictment.  Thank you.
24             THE COURT:  All right.  Thank you.
25             Mr. Gaffney, would you like to make your opening

1  statement now or later in the case?  It's entirely up to you.
2              MR. GAFFNEY:  Yes, Your Honor.  I will make it now.
3              THE COURT:  Yes, sir.
4              MR. GAFFNEY:  Thank you.
5              THE COURT:  How long do you anticipate you will be?
6              MR. GAFFNEY:  Oh, A minute.  Maybe less.
7              THE COURT:  All right.  Okay.
8              MR. GAFFNEY:  It will be very quick.
9                    DEFENDANT'S OPENING STATEMENT
10             MR. GAFFNEY:  Ladies and gentlemen, my name is Lucas
11 Gaffney.  And myself, along with my co-counsel, Jim Oronoz, are
12 representing Daniel Barnes.
13             I don't know how many witnesses the government's
14 going call in this case.  But after you've heard the evidence
15 and you've sat through this trial, you're going to realize that
16 this case comes down to two people.  That's Amber Marquardt,
17 who was the codefendant who pled guilty, and also Jasmin
18 Madison, who is the alleged victim in this case.
19             They are the primary sources of information that the
20 government is relying upon to convict Mr. Barnes.  And by the
21 end of this case, once you've heard from these witnesses, I'm
22 going to stand here, and I'm going to tell you why you cannot
23 rely on that information to support a conviction beyond a
24 reasonable doubt for Mr. Barnes.  Thank you.
25             THE COURT:  All right.  Thank you, sir.

1     Now, why don't we break.  I was wondering if maybe
2 break early, take lunch early, and start at 1:15.
3     Any objection to doing that?
4     MS. HERR:  No, Your Honor.
5     THE COURT:  Rather than just getting started with a
6 witness, and say, "Let's break."  Why don't we do it that way.
7 All right?
8     MS. HERR:  Thank you, Your Honor.
9     THE COURT:  So, let's recess now and come back at
10 1:15, ladies and gentlemen.  So you get the same amount of
11 time, but just a little bit earlier.
12     So we will be in recess until 1:15.  During this
13 recess, I again admonish you not to discuss this case among
14 yourselves or with anyone else, not to listen to, read, or
15 watch any report of or commentary on the trial by any person
16 connected with the trial or by any medium of information,
17 including without limitation newspaper, television, radio or
18 the Internet.
19     And you are not to form or express an opinion on any
20 subject connected with this case until it's finally submitted
21 to you under instructions from me for your deliberations.
22     So, and let me just caution you about something else.
23     As we go into -- in the halls, maybe you come in in
24 the morning and whatever.  You may see one of the attorneys or
25 whatever.  They are not to have any contact with you.  I think

1    you heard me at the very beginning of the trial.  They are to
2    have no contact with you.
3            So if you see a familiar face, you may say, "Oh, good
4    morning.  How are you?"  And they won't respond to you.  So my
5    advice is just ignore them for the remainder of the trial,
6    because they will ignore you.  They will have no contact with
7    you.  All right?
8            So we will be in recess until 1:15.  Thank you.  And
9    then you may call your first witness at that time.  We will be
10   in recess.
11       (Recess, 11:40 a.m.  Testimony appears in a separate
12   transcript.)

Case 2:13-cr-00423-JCM-GWF   Document 294   Filed 04/27/16   Page 20 of 20

Vol. 1 - 20

1              GENERAL INDEX

2                                                        Page

3   Government's Opening Statement                        12

4   Defendant's Opening Statement                         17

7                       --oOo--

8              COURT REPORTER'S CERTIFICATE

10       I, KATHERINE EISMANN, Official Court Reporter, United

11   States District Court, District of Nevada, Las Vegas, Nevada,

12   certify that the foregoing is a correct transcript from the

13   record of proceedings in the above-entitled matter.

15   Date:  April 27, 2016.

16                            /s/ *Katherine Eismann*

17                            Katherine Eismann, CSR CRR RDR