1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF NEVADA

3   UNITED STATES OF AMERICA,      )
                                   )   Case No. 2:13-cr-423-JCM-GWF
4              Plaintiff,          )
                                   )   Las Vegas, Nevada
5        vs.                       )   April 6, 2016
                                   )   9:22 a.m.
6   DANIEL JAMES BARNES,           )
                                   )   Day 3
7              Defendant.          )   Closing Arguments
    _____    )

8                  PARTIAL TRANSCRIPT OF PROCEEDINGS
9             BEFORE THE HONORABLE JAMES C. MAHAN
          UNITED STATES DISTRICT COURT JUDGE AND A JURY

10

11  APPEARANCES:

12  For the Government:

13          ALLISON HERR
            CRISTINA SILVA
14          Assistant U.S. Attorneys
            District of Nevada
15          333 Las Vegas Boulevard So.
            Las Vegas, Nevada 89101
16
    For the Defendant:
17
            LUCAS GAFFNEY
18          JAMES A. ORONOZ
            Oronoz, Ericsson & Gaffney LLC
19          1050 Indigo Drive, Suite 120
            Las Vegas, Nevada 89145
20

21

22

23  Court Reporter:  Katherine Eismann, CSR, CRR, RDR

24              (702)431-1919  eismann.csr@gmail.com

25  Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.

1          (Wednesday, April 6, 2016, 9:22 a.m.)

2                          --oOo--

3                  P R O C E E D I N G S

4      (Jury in.)

5          THE COURT:  All right.  Thank you.  You may be

6  seated.

7          Will the parties stipulate to the presence of the

8  jury and the alternates?

9          MS. HERR:  Yes, Your Honor.

10          MR. GAFFNEY:  Yes, Your Honor.

11          THE COURT:  Thank you.

12          All right, ladies and gentlemen.  I'm about to

13  instruct you upon the law as it applies to this case.  I would

14  like to instruct you orally without reading to you.  These

15  instructions, however, are of such importance that almost every

16  word is of some significance.

17          Therefore, it is advisable for me to read to you

18  carefully prepared written instructions.  These instructions

19  are long and some are quite complicated.  If they are not

20  especially clear when I read them to you, please bear in mind

21  that when you go back to the jury room, you will be able to

22  take them with you and study them there as you see fit.

23          Members of the jury, now that you have heard all the

24  evidence, it is my duty to instruct you on the law that applies

25  to this case.  A copy of these instructions will be available

1   in the jury room for you to consult.

2          It is your duty to weigh and to evaluate all the

3   evidence received in this case and, in that process, to decide

4   the facts.  It is also your duty to apply the law as I give it

5   to you, to the facts as you find them whether you agree with

6   the law or not.

7          You must decide the case solely on the evidence and

8   the law and must not be influenced by any personal likes or

9   dislikes, opinions, prejudices or sympathy.  You will recall

10  that you took an oath promising to do so at the beginning of

11  the case.

12          You must follow all these instructions and not single

13  out some and ignore others.  They are all important.  Please do

14  not read into these instructions or into anything I may have

15  said or done, any suggestion as to what verdict you should

16  return.  That is a matter entirely up to you.

17          The indictment is not evidence.  The defendant has

18  pleaded not guilty to the charges.  The defendant is presumed

19  to be innocent unless and until the government proves the

20  defendant guilty beyond a reasonable doubt.  In addition, the

21  defendant does not have to testify or present any evidence to

22  prove innocence.  The government has the burden of proving

23  every element of the charges beyond a reasonable doubt.

24          A defendant in a criminal case has a constitutional

25  right not to testify.  You may not draw any inference of any

1    kind from the fact that the defendant did not testify.

2           Proof beyond a reasonable doubt is proof that leaves

3    you firmly convinced that the defendant is guilty.  It is not

4    required that the government prove guilt beyond all possible

5    doubt.

6           A reasonable doubt is a doubt based upon reason and

7    common sense and is not based purely on speculation.  It may

8    arise from a careful and impartial consideration of all the

9    evidence or from lack of evidence.

10          If after a careful and impartial consideration of all

11   the evidence, you are not convinced beyond a reasonable doubt

12   that the defendant is guilty, it is your duty to find the

13   defendant not guilty.

14          On the other hand, if after a careful and impartial

15   consideration of all the evidence, you are convinced beyond a

16   reasonable doubt that the defendant is guilty, it is your duty

17   to find the defendant guilty.

18          The evidence you are to consider in deciding what the

19   facts are consists of:

20          1.  The sworn testimony of any witness; and

21          2.  The exhibits received in evidence; and

22          3.  Any facts to which the parties have agreed.

23          In reaching your verdict, you may consider only the

24   testimony and exhibits received in evidence.  The following

25   things are not evidence and you may not consider them in

1   deciding what the facts are.

2          Number 1.  Questions, statements, objections, and

3   arguments by the lawyers are not evidence.  The lawyers are not

4   witnesses.  Although you must consider a lawyer's questions to

5   understand the answers of a witness, the lawyer's questions are

6   not evidence.

7          Similarly what the lawyers have said in their opening

8   statements, will say in their closing arguments and at other

9   times is intended to help you interpret the evidence, but it is

10  not evidence.  If the facts as you remember them differ from

11  the way the lawyers state them, your memory of them controls.

12         2.  Any testimony that I have excluded, stricken, or

13  instructed you to disregard is not evidence.  I don't believe

14  we had any evidence received for a limited purpose.  Do you

15  agree?

16         MS. HERR:  I agree, Your Honor.

17         MR. GAFFNEY:  Well, Your Honor, just as to the

18  evidence that was the subject of our motion that the government

19  introduced for motive and intent.  They would be the images

20  from Facebook, the --

21         THE COURT:  In addition, some evidence may have been

22  received only for a limited purpose.  When I have instructed

23  you to consider certain evidence in a limited way, you must do

24  so.

25         3.  Anything you may have seen or heard when the

1    Court was not in session is not evidence.  You are to decide
2    the case solely on the evidence received at the trial.
3            Evidence may be direct or circumstantial.  Direct
4    evidence is direct proof of a fact, such as testimony by a
5    witness about what that witness personally saw, or heard, or
6    did.  Circumstantial evidence is indirect evidence.  That is it
7    is prove of one or more facts from which you could find another
8    fact.
9            You are to consider both direct and circumstantial
10   evidence.  Either can be used to prove any fact.  The law makes
11   no distinction between the weight to be given to either direct
12   or circumstantial evidence.  It is for you to decide how much
13   weight to give to any evidence.
14           In deciding the facts in the case, you may have to
15   decide which testimony to believe and which testimony not to
16   believe.  You may believe everything a witness says, or part of
17   it, or none of it.
18           In considering the testimony of any witness, you may
19   take into account:
20           1.  The witness's opportunity and ability to see, or
21   hear, or know the things testified to.
22           2.  The witness's memory.
23           3.  The witness's manner while testifying.
24           4.  The witness's interest in the outcome of the
25   case, if any.

1          5.   The witness's bias or prejudice, if any.

2          6.   Whether other evidence contradicted the witness's

3    testimony.

4          7.   The reasonableness of the witness's testimony in

5    light of all the evidence; and

6          8.   Any other factors that bear on believability.

7          The weight of the evidence as to a fact does not

8    necessarily depend on the number of witnesses who testify.

9    What is important is how believable the witnesses were and how

10   much weight you think their testimonies deserve.

11         You are here only to determine whether the defendant

12   is guilty or not guilty of the charges in the indictment.  The

13   defendant is not on trial for any conduct or offense not

14   charged in the indictment.

15         A separate crime is charged against the defendant in

16   each count.  You must decide each count separately.  Your

17   verdict on one count should not control your verdict on any

18   other count.

19         You have heard evidence that the defendant committed

20   other acts not charged here.  You may consider this evidence

21   only for its bearing, if any, on the question of the

22   defendant's intent, motive, opportunity, preparation, plan,

23   knowledge, identity, absence of mistake, or absence of accident

24   and for no other purpose.  You may not consider this evidence

25   as evidence of guilt of the crime for which the defendant is

1    now on trial.

2            You have heard testimony from Amber Marquardt, a

3    witness who received benefits from the government in connection

4    with this case.

5            Amber Marquardt pled guilty to a crime arising out of

6    the same events for which the defendant is on trial.  This

7    guilty plea is not evidence against the defendant, and you may

8    consider it only in determining that witness's believability.

9            For this reason, in evaluating the testimony of Amber

10   Marquardt, you should consider the extent to which or whether

11   her testimony may have been influenced by this factor.  In

12   addition, you should examine the testimony of Amber Marquardt

13   with greater caution than that of other witnesses.

14           You have heard testimony from persons who, because of

15   education or experience, were permitted to state opinions and

16   the reasons for their opinions.  This opinion testimony is

17   allowed because of the education or experience of this witness.

18           Such opinion testimony should be judged like any

19   other testimony.  You may accept it or reject it, and give it

20   as much weight as you think it deserves considering the

21   witness's education and experience, the reasons given for the

22   opinion, and all the other evidence in the case.

23           The defendant is charged in Count 1 of the second

24   superseding indictment with conspiring to commit sex

25   trafficking of a child.  In order for the defendant to be found

1  guilty of that charge, the government must prove each of the

2  following elements beyond a reasonable doubt:

3      First, beginning in or about April 2013 and ending in

4  or about August 2013, there was an agreement between two or

5  more persons to commit sex trafficking of children including,

6  but not limited to, JM, as charged in the second superseding

7  indictment.

8      And second, the defendant became a member of the

9  conspiracy knowing of at least one of its objects and intending

10  to help accomplish it.

11      A conspiracy is a kind of criminal partnership -- an

12  agreement of two or more persons to commit one or more crimes.

13  The crime of conspiracy is the agreement to do something

14  unlawful.  It does not matter whether the crime agreed upon was

15  committed.

16      For a conspiracy to have existed, it is not necessary

17  that the conspirators made a formal agreement or that they

18  agreed on every detail of the conspiracy.  It is not enough,

19  however, that they simply met, discussed matters of common

20  interest, acted in similar ways, or perhaps helped one another.

21  You must find that there was a plan to commit at least one of

22  the crimes alleged in the indictment as an object of the

23  conspiracy, with all of you agreeing as to the particular crime

24  the conspirators agreed to commit.

25      One becomes a member of a conspiracy by willfully

1   participating in the unlawful plan with the intent to advance

2   or further some object or purpose of the conspiracy, even

3   though the person does not have full knowledge of all the

4   details of the conspiracy.  Furthermore, one who willfully

5   joins an existing conspiracy is as responsible for it as the

6   originators.

7          On the other hand, one who has no knowledge of a

8   conspiracy, but happens to act in a way which furthers some

9   object or purpose of the conspiracy, does not thereby become a

10  conspirator.

11         Similarly, a person does not become a conspirator

12  merely by associating with one more persons who are

13  conspirators nor merely by knowing that a conspiracy exists.

14         The defendant is charged in Count 2 of the second

15  superseding indictment with sex trafficking of a child.  In

16  order for the defendant to be found guilty of that charge, the

17  government must prove each of the following elements beyond a

18  reasonable doubt.

19         First, the defendant did knowingly:

20         A.   Recruit, entice, harbor, transport, provide,

21  obtain, or maintain by any means JM; or

22         B.   Benefited financially from participation in a

23  venture which recruited, enticed, harbored, transported,

24  provided, obtained, or maintained by any means JM.

25         Second, the defendant:

1          A.   Knew that JM had not attained the age of 18

2    years; or

3          B.   Had reasonable opportunity to observe JM; or

4          C.   Recklessly disregarded the fact that JM has not

5    attained the age of 18 years and would be caused to engage in

6    commercial sex acts; and

7          Third, the offense was committed in or affecting

8    interstate commerce.

9          In determining whether the defendant's conduct was in

10   or was -- let me try that again.

11         In determining whether the defendant's conduct was

12   "in or affected interstate commerce," you may consider whether

13   the defendant used means of -- or facilities of interstate

14   commerce, such as telephones, the Internet, or hotels that

15   serviced interstate travelers, or whether his conduct

16   substantially affected interstate commerce by virtue of the

17   fact that he purchased items that moved in interstate commerce.

18         With respect to the crimes charged in Counts 1 and 2

19   of the second superseding indictment, the term "reckless

20   disregard" implies a willful blindness to the existence of a

21   fact.  In other words, you may find that the defendant acted

22   with reckless disregard if you determine either that he

23   deliberately closed his eyes to what he had every reason to

24   believe was fact or he failed to inquire extensively into that

25   fact as would a reasonable person under the same circumstances.

1          The defendant is charged in Count 3 of the second

2     superseding indictment with transportation of a minor with the

3     intent that she engage in prostitution.

4          In order for the defendant to be found guilty of that

5     charge, the government must prove each of the following

6     elements beyond a reasonable doubt:

7          First, the defendant transported JM from Nevada to

8     California; and

9          Second, the defendant did so with the intent that JM

10    engage in prostitution; and

11         Third, JM was under the age of 18 years at the time.

12         The defendant is charged in Count 17 -- I'm sorry.

13         In count -- the defendant is charged in Count 4 of

14    the second superseding indictment with conspiracy to commit

15    sexual exploitation of a child.  That is production of child

16    pornography.

17         In order for the defendant to be found guilty of that

18    charge, the government must prove that a conspiracy to commit

19    sexual exploitation of a child existed beginning in or about

20    April of 2013 and ending in or about May 2013.

21         The government must prove the same elements that I

22    have already instructed you on to show that a conspiracy

23    existed.

24         In order for a defendant to be found guilty of a

25    conspiracy to commit sexual exploitation of a child,

1    (production of child pornography), the government must prove

2    that an object of the conspiracy was to commit sexual

3    exploitation of a child.

4         In order to prove sexual exploitation of a child, the

5    government must prove the follow elements beyond a reasonable

6    doubt:

7         First, at the time of the offense, JM was under the

8    age of 18 years; and

9         Second, the defendant knowingly employed, used,

10   persuaded, induced, enticed, or coerced JM to engage in

11   sexually explicit conduct for the purpose of producing a visual

12   depiction of such conduct; and

13        Third:

14        A.   The defendant knew or had reason to know that the

15   visual depiction would be mailed or transported across state

16   lines or in foreign commerce; or

17        B.   The visual depiction was produced using materials

18   that had been mailed, shipped, or transported across state

19   lines or in foreign commerce; or

20        C.   The visual depiction was actually -- let me try

21   that again.

22        C.   The visual depiction was mailed or actually

23   transported across state lines or in foreign commerce.

24        In this case, "sexually explicit conduct" means

25   actual or simulated lascivious exhibition of the genitals or

1    pubic area.

2              In this case, "producing" means producing, directing,

3    manufacturing, issuing, publishing, or advertising.

4              You may find that the defendant acted knowingly if

5    you find beyond a reasonable doubt that the defendant:

6              1.  Was aware of a high probability that JM was being

7    transported for the purposes of prostitution; and

8              2.  Deliberately avoided learning the truth.

9              You may not find such knowledge, however, if you find

10   the defendant actually believed that JM was not being brought

11   to California to work as a prostitute or if you find that the

12   defendant was simply careless.

13             With regard to Counts 1 and 2, you may find that the

14   defendant knew that JM was under the age of 18 if you find

15   beyond a reasonable doubt that the defendant:

16             1.  Was aware of the high probability that JM was

17   under the age of 18 and had a reasonable opportunity to observe

18   JM; and

19             2.  Deliberately avoided learning the truth.

20             You may not find such knowledge, however, if you find

21   that the defendant actually believed that JM was over the age

22   of 18 or if you find that the defendant was simply careless.

23             With regard to Counts 3 and 4, the government does

24   not have to prove that the defendant knew that JM was under the

25   age of 18 at the time the charged conduct occurred in order for

1    you to find the defendant guilty of the charges.

2            That is, the defendant's knowledge of the age of the

3    individual transported is not part of the proof of the

4    government -- is not part of the proof required of the

5    government in order to sustain a conviction in Count 3, nor is

6    the defendant's knowledge of the age of the individual used to

7    engage in sexually explicit conduct for the purpose of

8    producing a visual depiction part of the proof required of the

9    government in order to sustain a conviction in Count 4.

10           Furthermore, the defendant may have been mistaken

11   about or ignorant of the age of the transported individual is

12   not a defense.

13           When you begin your deliberations, elect one member

14   of jury as your foreperson who will preside over the

15   deliberations and speak for you here in court.

16           You will then discuss the case with your fellow

17   jurors to reach agreement if you can do so.  Your verdict,

18   whether guilty or not guilty, must be unanimous.

19           Each of you must decide case for yourself, but you

20   should do so only after you have considered all the evidence,

21   discussed it fully with the other jurors, and listened to the

22   views of your fellow jurors.

23           Do not be afraid to change your opinion if the

24   discussion persuades you that you should.  But do not come to a

25   decision simply because other jurors think it is right.

1          It is important that you attempt to reach a unanimous

2     verdict but, of course, only if each of you can do so after

3     having made your own conscientious decision.  Do not change an

4     honest belief about the weight and effect of the evidence

5     simple to reach a verdict.

6          Because you must base your verdict only on the

7     evidence received in the case and on these instructions, I

8     remind you that you must not be exposed to any other

9     information about the case or to the issues it involves.

10          Except for discussing the case with your fellow

11     jurors during your deliberations, do not communicate with

12     anyone in any way and do not let anyone else communicate with

13     you in any way about the merits of the case or anything to do

14     with it.

15          This includes discussing the case in person, in

16     writing, by phone, or electronic means, via email, text

17     messages, or any Internet chat room, blog, website, or other

18     feature.

19          This applies to communicating with your family

20     members, your employer, the media or press, and the people

21     involved in the trial.  If you are asked or approached in any

22     way about your jury service or anything about this case, you

23     must respond that you have been ordered not to discuss the

24     case -- you have been ordered not to discuss the matter and to

25     report the contact to the Court.

1          Do not read, watch, or listen to any news or media

2     accounts or commentary about the case or anything to do with

3     it.  Do not do any research, such as consulting dictionaries,

4     searching the Internet, or using other reference materials, and

5     do not make any investigation or in any other way try to learn

6     about the case on your own.

7          The law requires these restrictions to ensure the

8     parties have a fair trial based on the same evidence that each

9     party has had an opportunity to address.

10          A juror who violates these restrictions jeopardizes

11     the fairness of these proceedings and a mistrial could result

12     that would require the entire trial process to start over.  If

13     any juror is exposed to outside information, please notify the

14     Court immediately.

15          Some of have you taken notes during the trial.

16     Whether or not you took notes, you should rely on your own

17     memory of what was said.  Notes are only to assist your memory.

18     You should not be overly influenced by your notes or those of

19     your fellow jurors.

20          The punishment provided by law for this crime is for

21     the Court to decide.  You may not consider punishment in

22     deciding whether the government has proved its case against the

23     defendant beyond a reasonable doubt.

24          A verdict form has been prepared for you which the

25     attorneys may explain to you in closing argument.  After you

1    have reached unanimous agreement on a verdict, your foreperson

2    will fill in the form that has been given to you, sign and date

3    it, and advise the bailiff that you are ready to return to the

4    courtroom.

5              If it becomes necessary during your deliberations to

6    communicate with me, you may send a note through the marshal or

7    bailiff signed by your foreperson or by one or more of you.

8              No member of the jury should ever attempt to

9    communicate with me except by a signed writing, and I will

10   communicate with any member of the jury on anything concerning

11   the case only in writing or here in open court.

12             If you send out a question, I will consult with the

13   lawyers before answering it, which may take some time.  You may

14   continue your deliberations while waiting for the answer to any

15   question.

16             Remember that you are not to tell anyone, including

17   me, how the jury stands numerically or otherwise on the

18   question of the guilt of the defendant until after you have

19   reached a unanimous verdict or have been discharged.

20             And that concludes the instructions.

21             All right.  Miss Herr, you may now begin the closing

22   arguments.

23                        GOVERNMENT'S CLOSING ARGUMENT

24             MS. HERR:  Thank you, Your Honor.

25             "Baby, you got options.  You can win or lose.  I

Government's Closing Argument

1  suggest you win.  All you have to do is choose.  Let me show

2  your dude the news.  Let me inform him about his loss.  Let me

3  know that you've been moved, because your fracking with the

4  boss."

5          Good morning, ladies and gentlemen.  I start my

6  statement today with that -- with the defendant's own words;

7  because, frankly, they just so succinctly sum up the evidence

8  in this case.

9          Today, you as the jurors, are going to be able to

10  make a choice.  You will have options.  You are going to inform

11  us what your decision is.

12          The defendant stands before you charged with four

13  separate crimes.  Now, the Judge has already informed you that

14  those charges are merely allegations.  The defendant has a

15  presumption of innocence.  It's the government's burden to

16  prove that these offenses take place.

17          Now, that's a burden that the government gladly

18  meets, and it's one that I believe the evidence in this case

19  proves that we have overcome.

20          Over the last two days, you've heard from several

21  different witnesses, you've looked at several different pieces

22  of evidence, and what I want to do this morning is just take a

23  few minutes of your time to summarize how I believe those --

24  that testimony and those pieces of evidence fit within the

25  elements that I'm required to prove to you today.

Government's Closing Argument

1          As Judge Mahan explained to you, being a juror is not

2    always convenient, and it's not always comfortable.  Sometimes

3    we deal with subject matter that maybe is unusual for you or

4    something that you are not entirely comfortable with.

5          Because of that, we, in particular in this case,

6    appreciate so much the attention that you have paid in this

7    case.  And we believe it will also help you to see why we have

8    met our burden.

9          And what we know in this case is that the defendant,

10   Daniel Barnes, convinced a 15-year-old girl to work for him as

11   a prostitute.  We know he took that girl from Nevada to

12   California, and that he eventually brought her back to Nevada.

13   And we know that he had her pose for some sexually explicit

14   photos that were posted on a website that was particularly

15   notorious for its connection to prostitution.  And the whole

16   purpose of that ad was to attract interest in her services as a

17   prostitute.

18         So let's start at the beginning.  How do we know when

19   this happened?  The defense has cross-examined some of our

20   witnesses and has been very quick to point out that there's not

21   perfect agreement between every single witness as to the dates

22   when Counts 2, 3 and 4 occurred.

23         But here's the thing.  There doesn't have to be

24   perfect alignment.  The government charged these offenses, in

25   Count 1, as having occurred between April 2013 and August of

Government's Closing Argument

1    2013.  In Counts 2, 3 and 4, we charged the time period as

2    being in or about April 2013 to in or about May of 2013.

3            So what does that mean?  Well, I would submit to you

4    that means that we must prove that these -- that the alleged

5    conduct occurred within a reasonable time frame of that time

6    frame that was allowed.

7            In other words, if it's in or around, we have some

8    leeway on the exact dates, but we need to prove that it

9    reasonably happened within that time frame.

10           So how are we going to be able to figure that out?

11   Well, again, let's look at that evidence.  You'll recall that

12   the rental car GPS specifically showed that Daniel and Amber

13   were in Las Vegas starting on April 26th, 2013.

14           They went to Merced on April 29th, and they returned

15   back to Las Vegas on May 3rd.  Returning then for the final

16   time to California on May 6th.

17           We also know that there are text messages that took

18   place between Jasmin Madison and between Daniel that started on

19   April 28th and ended on May 6th.  Again, that May 6th is

20   consistent with the time in which they returned back to

21   California.

22           We also know there's an ad on RedBook -- on

23   myredbook.com that was posted to Internet on May 2nd.  That

24   particular ad advertised Jasmin's services as a prostitute in

25   Merced, California, on May 2nd, 2013.  Again, that's completely

Government's Closing Argument

1  consistent with the GPS testimony -- excuse me.  The GPS

2  evidence as well as the phone messages.

3          And also we have the hotel receipts.  We have one

4  from April 30th, putting them in Modesto, one from May 2nd,

5  putting them in Merced, and one on May 3rd, putting them in Las

6  Vegas.

7          So aside from the testimony of our witnesses, aside

8  from what you heard from Jasmin and heard from Amber, you have

9  independent evidence that is showing you a time frame.  And

10  it's a time frame that fits within the time period alleged by

11  the government.

12          Now, the second thing that always has to be proved is

13  where did this occur?  Well, again, we are going to look at the

14  exact same evidence.  We know based on the GPS, the locations

15  that they were at.  We know based on these hotel receipts, the

16  locations they were staying in.

17          So we can reasonably prove, whether you believe our

18  witnesses or not, that there is evidence to show they were in

19  Nevada, and moved to California, and returned back to Nevada.

20          Now, in dealing with the substantive charges, the

21  government has just read to you those elements that we have the

22  burden of proving.  And in the case of sex trafficking, we have

23  to prove first that there was some sort of act that the

24  defendant either recruited, enticed, harbored, transported,

25  provided, obtained, or maintained.

Government's Closing Argument

1        You'll note that in our indictment, it refers to JM.

2   JM refers to Jasmin Madison.  And I apologize.  We didn't

3   explain this earlier, but JM is used because she was a minor at

4   the time, and so we want to protect her privacy in any

5   documents that are ultimately published in a public record.

6   And so for that reason, we remove her name and just substitute

7   those initials.  But that's who we are referring to when we

8   talk to JM.

9        The other way that we can prove that sex trafficking

10  element is to show that the defendant benefited financially by

11  his participation in a venture that enticed, harbored,

12  transported, provided, attained, or maintained Jasmin.

13       So, again, what evidence do we have here?  Well, we

14  have the evidence of Jasmin, who tells you, "Hey, I met Daniel

15  at a Motel 6, and he talked to me.  And I chose up and decided

16  to move and work with his team."

17       We have Amber's testimony that, yeah, I saw her.  She

18  looked like she was having some problems.  I told her she could

19  call me.  Later on she did.  I introduced her to Daniel.  We

20  met up.  There was a conversation.  And I think the particular

21  words she used were "a girl knows the score.  If you come to

22  the hotel room, your intent is to choose up."  So if we're

23  recruiting or enticing, again, we do that by that conversation.

24       We also have testimony from Amber where she talked

25  about part of the bottom's responsibility was to knock on

Government's Closing Argument

1    behalf of the defendant.

2           Now, if you remember, we had expert testimony, and

3    then we also had explanations given by the officers who were

4    involved in the case, that knock has a little bit of a special

5    meaning when we talk about it within the pimp and prostitute

6    subculture.

7           When we knock somebody, what we're talking about is

8    we are knocking them away from whatever team they are working

9    with, and we are bringing them onboard with our team.  So, in

10   this case, we've got a girl who is enticed to believe she's

11   going to have a better life if she comes to work for Daniel.

12          We also know that Daniel controlled all the money.

13   He paid for their clothing, the hotel rooms, their food.  Well,

14   in plain English, what that means is that he harbored, or

15   provided for, or maintained Jasmin during the period of time

16   that she was with him, because he was providing for her.  He

17   was maintaining those elements for her.

18          He maintained a place, a roof over her head, by

19   putting her in a hotel room and paying for that.  He provided

20   for her by ensuring she had food, by -- if you recall, she

21   specifically talked about him buying her tennis shoes, because

22   the shoes that she had he didn't think were appropriate.  And

23   so one of the very first things he did when he brought her

24   onboard, is he went out to buy her a pair of shoes.

25          Now, the other alternative, again, is that we can

Government's Closing Argument

1   talk about did he benefit financially from this?  Well, we know

2   that both Jasmin and Amber indicated that all of their earnings

3   went to Daniel.

4            We know that on Facebook, we saw several entries that

5   dealt with references to earnings.  About the fact that he was

6   in the game for the money.  That he was all about stacking the

7   cash.  That that was his motivation.

8            We also have the iPad statements.  And if you will

9   recall in those specific statements, the defendant again makes

10  reference -- he talks about the fact that he's striving for the

11  cheddar.  That the girls who work for him need to keep their

12  eyes on the prize.  And you will also note here on this line

13  that he talks about the fact that my hand is in a bitch first.

14           Now, I apologize for that language.  I know it's a

15  little unusual to have lawyers using profanity.  But in this

16  case, I'm referring specifically to evidence, and this is the

17  language that he's using.  And that language, I believe, based

18  on what the experts have testified to and my officers have

19  testified to -- when he's talking about having his hand in a

20  bitch first, what he means is he's making his money from the

21  girls that are working for him.

22           Now, one of the other elements that we have to prove

23  in a sex trafficking case is we need to deal with this issue of

24  age.  And the law gives us three options for proving that.

25           Basically, we either can show that the defendant knew

Government's Closing Argument

1  how old -- how old Jasmin was.  That she was under the age of

2  18.  And what evidence do we have of that?

3       Well, we have the evidence of Jasmin herself who

4  said, "I told him I was 16."  Now, we also have the evidence of

5  the birth certificate that tells us she was actually 15, not

6  16.

7       But again, the issue isn't did he tell the correct

8  age.  The issue is did he know she was under 18.  And, in fact,

9  we have evidence that he did know that she was under 18.

10      But even if for some reason you decide that's not

11  sufficient, the law gives us two other options.  One is that he

12  had a reasonable opportunity to observe JM.  And the point of

13  this is that if I'm with you for a period of time, I have some

14  responsibility to check out who I'm working with.  I need to do

15  my due diligence.

16      So we know, again based on that time frame we just

17  talked about, that they were together for a period of somewhere

18  between 7 to 10 days.  You may recall that I asked Amber, "Hey,

19  during that time period, did you ever see this girl take a

20  shower?  Did you ever see her take her makeup off?"

21      Why did I ask that?  Well, because most of us look a

22  little different with our makeup off.  And so while the defense

23  might want to point to pictures and say, "Look.  Doesn't she

24  look like an adult?"

25      If I'm around a 15 year old for 10 days, ladies and

Government's Closing Argument

1  gentlemen, draw your own conclusions.  But again, I think

2  that's a reasonable opportunity to observe this girl, identify

3  her behavior, determine whether she's acting consistent with

4  someone who is younger or older.  Whether she looks consistent

5  with someone who was younger or older.

6          You recall the picture that we put into evidence that

7  was actually a booking photo of her.  That actually shows what

8  she looked like when she was 15 years old.  That's far

9  different than what she looks like today on the stand three

10  years later.

11          The third option we have is that he recklessly

12  disregarded the fact that she was under 18.  In other words,

13  knew or should have known, and that he acted in some way in a

14  callus manner.  Chose not to inquire.  And I would suggest that

15  that is again one of the elements that you can strongly look to

16  in this case.

17          We know Amber, when we asked her, "Hey, in your line

18  of work, do you ask each other a lot of personal questions?"

19  The answer was, "No, we don't.  The less we know the better.

20  And there's a reason why."

21          You may also recall that the witnesses testified to

22  the fact that Jasmin didn't have any identification.  Again,

23  that should have been a pretty strong clue.  If I don't have a

24  driver's license, I don't have some sort of ID that shows my

25  age, that ought to trigger a reason for an inquiry.

Government's Closing Argument

1          That, again, I would suggest to you, falls under this
2     idea of a reasonable opportunity to observe and reckless
3     disregard.  "Because I didn't choose to do anything about that
4     piece of information that I knew, I just chose to ignore it."

5          Now, that final element deals with "Did this offense
6     in some way affect interstate commerce?"  Now, the Judge has
7     already given you an instruction, and I think that's fairly
8     clear.  But certainly we know in this case, that the defendant
9     used telephones.  They exchanged text messages via the
10    Internet.  They stayed in hotels that service interstate
11    travelers.  He purchased food, bought clothing that in all
12    likelihood, moved through interstate commerce.  So we know that
13    they have touched that interstate nexus.

14         Now, in Count 2 -- excuse me.  In Count 3, we are
15    dealing with transportation of a minor.  These elements are a
16    bit more straight forward.

17         In those elements, we simply need to show that he
18    transported her from Nevada to California, that he did so with
19    the intent that she engage in prostitution, and that she was
20    underage at the time.

21         Here it's effectively, what I would submit, is a
22    strict liability offense.  She's under the age of 18, and we
23    know that based on Jasmin's testimony and based on her birth
24    certificate.

25         The issue is going to be was she transported?  Well,

Government's Closing Argument

1  really, nobody's, I don't think, even contesting that issue.

2  We know she was in the car.  We know Jasmin told us that she

3  went to California.  We know Amber told us that she went --

4  that she was in the car and went to California.

5          Now, the issue is who was driving the car?  Well, the

6  government understands and accepts that Amber physically drove

7  the car.  But you'll recall she also talked about the fact that

8  she did that at Daniel's direction.

9          We know from our expert, when he testified, he told

10 you about, again, the subculture.  And said, "Hey, this isn't a

11 partnership that we're talking about.  The pimp controls the

12 game.  He makes the decisions.  He decides where we go.  When

13 we go.  How we go."

14         And we also know, based on Daniel's own words, that

15 our expert wasn't giving mere conjecture.  He was hitting it

16 out of the ballpark.  Because if we look again at these iPad

17 notes, you'll see right here where it talks about "Even though

18 I'm on da run, you can catch me in traffic, riding shotgun,

19 being chauffeured by a bad bitch."

20         Ladies and gentlemen, I would suggest to you if

21 you're being chauffeured, you're in control.  The chauffeur

22 might take you to the destination, but he takes to you to the

23 destination that the passenger picks.

24         And in this case, Daniel had control of where they

25 were going, Daniel was making those decisions, and he is

Government's Closing Argument

1    responsible for the act of transporting Amber as well as

2    Jasmin.

3            Now, the final element in that is that he did so with

4    the intent that she engage in prostitution.  Well, again,

5    Jasmin testified, "Hey, she understood she was going to be

6    working."  Amber said, "A girl's got to keep her keep.  Got to

7    earn her keep," I think is the word she used.

8            We have again that myRedBook ad that we talked about

9    that very clearly points out that she's there to be a

10   prostitute.  It even says, "Hey, I'm from Las Vegas.  I'm new

11   in town here.  Want to meet some people in Merced."

12           And again, we also have the text messages in which

13   Jasmin is -- may not directly say the words 'I'm prostituting,"

14   but we can certainly infer from the language she uses.  "Daddy,

15   I'm bleeding.  I don't feel so good.  I want to stop."

16           And his response back is, "Man up."  And a few hours

17   later, we see another text.  "Daddy, I'm bleeding through my

18   clothes."  Does that leave any doubt in your mind that she was

19   on the track with customers trying to get dates?

20           Now, in Count 4, we deal with conspiracy to commit

21   sexual exploitation of a child.  That's a very long, polite way

22   of saying, "Did we produce child pornography?"

23           Count 1 and Count 4 are a little different, because

24   they are a conspiracy.  As the judge has explained to you, a

25   conspiracy is basically an agreement by two or more people that

Government's Closing Argument

1  you are going to commit some type of unlawful act.

2          It is this intent to commit the act that is the

3  actual crime.  And basically, it's a situation in which each

4  member of the conspiracy becomes what you might call an agent

5  or a partner of the other party.

6          Now, the heart of this is about what your plan is to

7  do and not whether you succeeded in carrying out all the

8  elements.  Although in this case, we frankly think that they

9  did succeed in carrying out all those elements.

10         But again, looking specifically to the pornography

11  charge, this was the intent of that conspiracy.  Again, was she

12  under the age of 18?  I know you are getting tired of hearing

13  me say this.  But again, I'm going to repeat myself.  We have

14  Jasmin's testimony she was under 18.  We have her birth

15  certificate.

16         The second element is the defendant employed, used,

17  persuaded, induced, enticed, or coerced her to engage in

18  sexually explicit conduct for the purpose of producing a visual

19  depiction of this conduct.

20         How do we know that that happened?  Again, we have

21  Jasmin's testimony.  She says, "They took pictures of me in

22  order to produce an online ad."  Amber said, "I took those

23  pictures.  I was directed by Daniel to put together an ad."

24         We have an iPad note in which, in Daniel's own

25  words, he says -- he's talking about how he picks up his girls

1    and what he does with them.  He says, "I tell 'em to pick a

2    state.  Then I book a flight.  Then I post an ad."  Ladies and

3    gentlemen, that's because that's part of his pattern and

4    practice is that he posts his girls on the Internet.

5              Now, in producing this ad or putting together these

6    pictures of what are child pornography, the defendant had to

7    know that that visual depiction was going to be mailed or

8    transported in some way across state or foreign commerce.

9              Well, what did we do here?  We know that the ad was

10   posted by Daniel on myRedBook.  Amber testified to the fact

11   that she was driving, and he was trying to catch a wireless

12   connection so that he could upload that ad.

13             Well, I would suggest to you that that mere act of

14   uploading the ad, going through the Internet, means that I am

15   taking it out of one state and moving it across the web,

16   bouncing off of satellites who knows where, to ultimately get

17   to that location.

18             We also know that we even had the physical act of

19   driving it across state lines.  Because they took those

20   pictures in Nevada, but they posted them when they got to

21   California.  So they had that information with them when they

22   crossed the border.

23             But more than anything else, we have proof that that

24   transmission was successful in the ad itself.  When we take a

25   look at this ad, you see over here on the right-hand corner

Government's Closing Argument

1    where we talk about the number of views?  That number is 3,352.

2    What that represents is 3,352 times that someone logged in to

3    see this ad.

4           Again, Daniel didn't take the pictures.  Daniel

5    didn't have to take the pictures.  He's charged with

6    conspiracy.  He has to work with one or more persons in order

7    to produce this image and put it in interstate commerce.  Here

8    he worked with Amber, and he worked with myRedBook.com, and he

9    worked with the 3,352 unknown persons who took a look at that

10   ad.

11          Now, the final element that I want to deal with is

12   the conspiracy to commit sex trafficking.  That's actually

13   charged as Count 1, even though I'm talking about it last.

14          Now, again, we have those same elements of the

15   conspiracy.  You have to act with one or more persons to

16   achieve some type of unlawful goal.  Doesn't have to be a

17   formal partnership.  You don't have to have formal

18   documentation, but we do have to show that there's a conspiracy

19   in which we are sharing the same goal or objective to traffic

20   underage girls.

21          Here we had the testimony of Amber, who indicated

22   that she performed any number of tasks at Daniel's direction.

23   That's going to include everything from obtaining hotel rooms,

24   to renting cars, to knocking other girls.

25          We also had testimony that talked about the fact that

Government's Closing Argument

1   part of the reason why he would move them around frequently was

2   because he was in communication with a circle of other pimps to

3   improve his business.  He found out from them what kind of

4   on-site -- online sites were hot.  Where should he post his

5   girls at in order to attract the most ads?

6           He found out from this circle how much money he

7   should charge for an specific sex act, because, again, remember

8   there was testimony about the fact that different areas would

9   produce different types of earnings.

10          There was also talk about him moving them to hot

11  areas.  And again, he gets these tips from other pimps that

12  he's working with.  Now, frankly, we might refer to this as his

13  marketing team, because that's really what's going on.  He's

14  relying on these other folks to do his market analysis and

15  determine where he can best sell his product.  Another way of

16  that might be to simply say he's conspiring with them to move

17  girls.

18          You might also remember when we looked at the

19  Facebook pages, there was a specific set of conversations or

20  messages that took place between Daniel and someone by the name

21  of Jilil Latif.  And if you remember, when we went through

22  those conversations -- I believe Mr. Mollica was on the stand

23  at the time.  We had him read some of those into the record.

24          Now, you are going to have all that evidence back

25  with you in the jury room.  You will have an opportunity to

Government's Closing Argument

1    read it yourself.  But I would submit to you that you are going

2    to find messages in which he talks about, on September 3rd,

3    "I'm gonna to send my game by herself to Santa Rosa.  Are you

4    gonna to be home?"

5         I would submit that infers that he's trying to make

6    sure that with Jalil Latif is going to be available, because he

7    might need to have somebody help him supervise one of his girls

8    who's going to be away from him.

9         We also have Jalil coming to him for advice, and

10   saying, "So, I don't want my hoes to like each other.  Right?

11   The goal's for them not to like each other?  Is it for them to

12   compete?"

13        And we have Daniel responding back, "Well, in a way.

14   But they need to know they're on the same team.  If you post

15   'em in different cities, you can get different money, and they

16   don't step on each other's toes."  Wow.  Maybe you should go in

17   the consulting business.

18        Ladies and gentlemen, that is at least circumstantial

19   evidence, if not direct proof, that he is consulting with other

20   parties.  That he is in a conspiracy with other people to

21   traffic.

22        Now, when we look at, again, the object of that

23   conspiracy, we again have to look at are we meeting those

24   elements of sex trafficking?

25        Well, again, when we talk about recruiting and

1    enticing, we have the evidence of Amber talking about knocking.

2    And then we have just example after example of the defendant

3    himself talking about his ongoing efforts to attract more

4    prostitutes.

5              On May 16th, 2013, he says, "I'm at a strip club in

6    Redwood City.  I'm trying to move somethin'."  On the 25th, he

7    says "Hey, I just knocked some more work.  It's snowin' in the

8    bay."  On the 29th, he complains, "Some old ratchet tried to

9    get out of pocket with me for pimping her daughter."  On the

10   2nd, he tells you, "Hey, I just knocked some more work in

11   Vegas."

12             We also know that on July the 6th, he writes a rhyme

13   or a rap to somebody by the name of Naee Campbell, in which he

14   says, "On the real, little mama.  It's time for change.  An

15   upgrade.  Witness firsthand how real one live and do things.

16   To rise and shine, you got a glow about yourself, but you don't

17   shine like mines.  I can show you a few things.  How to stack

18   dis paper.  I'll put you on a plane to Maine.  Wine and dine

19   you while in Spain.  I do it Godzilla.  Extra large for the

20   scrilla.  So if you looking for a boss, Pay Da be that nigga."

21             I would submit to you that that Facebook ad is an

22   enticement to have this woman come work for him.  He's telling

23   her, and promising her, and enticing her with a lifestyle.

24   "I'm gonna put you on planes.  I'm gonna take to you foreign

25   countries.  I'm gonna buy you fancy stuff."

Government's Closing Argument

1            On July 23rd, we have a comment again.  "A pimp
2    knocks again.  I'm a sore loser.  I just gotta win."  Then he
3    goes on on a second ad the same time, saying, "What cha know
4    about knocking bitches left and right.  Sweeping hoes off they
5    feet.  Putting them on a flight.  With just a limit game, let
6    'em they soar like a kite.  Pay da boy mack'n.  Be a bad bitch
7    attraction."  Remember, we talked about the word mack'n?  That
8    means he's not just a regular pimp.  He's a higher level pimp.
9            But again, it's not enough just to show that he was
10   trying to look for prostitutes.  We need to show that he was
11   looking for girls who were underage.  So, how do we look at
12   that element?
13           Well, we look at that conspiracy.  The intent of that
14   conspiracy can be shown, I think, through the two messages that
15   we showed you yesterday between Kaitlyn Davidson and Erica
16   Johnson.
17           With Kaitlyn Davidson, we don't know her exact age,
18   but we do know that she said she was at least under the age of
19   21.  And if you will recall, there were several pages of
20   messages going back and forth, that actually go over a two-day
21   period, in which he is trying to groom or entice her in to
22   coming on board with him.  Telling her, "Hey, don't worry about
23   it.  You are having sex already.  Not a big deal if you just
24   throw a little money into it.  What's the difference?  You may
25   as well get paid for it."

Government's Closing Argument

1          She says to him, "Yeah, but what are my friends and
2     family going to think?"

3          "Ah, baby.  Don't worry about that.  You don't ever
4     have to leave your hotel room.  You only have to go on outcalls
5     if you want.  I'll bring 'em in to you.  Give me 30 days, and
6     I'll make your dreams come true."

7          Ladies and gentlemen, I think you've seen pretty
8     well, over the last two days, the utter devastation that this
9     conspiracy has wrought.  Those girls who testified for you were
10    not living the dream.

11         Finally, we have him talking to Erica Johnson.  Now,
12    he wasn't successful.  But again, remember, in a conspiracy, he
13    doesn't have to be.  He just has to make that attempt.  And in
14    that particular ad, he talks to Erica and says -- I forgot the
15    exact language or something.  "You're a sexy fine fox."  And
16    she responds immediately, "Dude.  You're an old ass creeper.
17    Stay away from me.  I'm 15 years old."

18         And what was Daniel's response?  It wasn't "Oh, 15.
19    Wow.  Get off my Facebook page."  It was, "Little girl stand
20    and listen.  You need to show me respect."  How do I know that
21    that wasn't a mistake or a one-time thing?  I know from Amber's
22    own words and her tearful testimony that she was 15 years old
23    when she started working for Daniel.

24         I know from Jasmin that she was 15 years old when she
25    started working for Daniel.  I know from Bryson that she was 17

Government's Closing Argument

1    years old when she first worked for Daniel.  This isn't a

2    mistake.  This is an intent to engage in a conspiracy to

3    traffic young girls.

4            THE COURT:  How much longer are you going to be?

5            MS. HERR:  About five more minutes, Judge.

6            THE COURT:  All right.

7            MS. HERR:  I have one last word that I want to leave

8    you with, and that's the word "Daddy."  It's amazing how such

9    an innocuous phrase, which we would normally think it would

10   evoke positive memories, in this case, has a whole different

11   meaning.

12           Both our expert as well as both of these girls talked

13   about the fact that Daddy was a sign of respect.  Daddy

14   represented lots of different things.  Other experts told us

15   that pimps, when they are trying to go after these young girls,

16   often look for girls who come from broken homes that have bad

17   family situations.

18           And then they try to fulfill that need by creating a

19   pseudo family.  And they perpetrate that and continue that

20   fraud by having the girls discuss them or call them Daddy.

21   Having them call the other girls they work with wifey.  Trying

22   to make it a family unit, so that will keep the team intact.

23   Make us loyal to each other.  Just like a family.  We're not

24   going to rat on each other.

25           If you remember what the girls said when we asked

Government's Closing Argument

1    them, "Why did you call him Daddy?"

2            "Because he told me to."

3            I submit to you that if Daniel holds the purse

4    strings, he maintains control, he makes the decisions, he's the

5    daddy, then he bears responsibility.  Thank you.

6            THE COURT:  How long do you expect your closing will

7    be?

8            MR. GAFFNEY:  About 15 minutes.

9            THE COURT:  All right.  Why don't we take our recess

10   then at this time.

11           During this recess, I again admonish you not to

12   discuss this case among yourselves or with anyone else, not to

13   listen to, read, or watch any report of or commentary on the

14   trial by any person connected with the trial or by any medium

15   of information, including without limitation newspaper,

16   television, radio or the Internet.

17           And you are not to form or express an opinion on any

18   subject connected with this case until it's finally submitted

19   to you under instructions from me for your deliberations.

20           So, we will be in recess 10 minutes.

21      (Recess, 10:25 a.m.  Resumed 10:37 a.m.  Jury in.)

22           THE COURT:  Thank you.  You may be seated.

23           Parties stipulate to the presence of the jury and the

24   alternates?

25           MS. HERR:  Yes, Your Honor.

Defendant's Closing Argument

1            MR. GAFFNEY:  Yes, Your Honor.

2            THE COURT:  All right.  Mr. Gaffney, you may proceed.

3            MR. GAFFNEY:  Thank you, Judge.

4            THE COURT:  Yes, sir.

5                     DEFENDANT'S CLOSING ARGUMENT

6            MR. GAFFNEY:  Ladies and gentlemen, first and

7     foremost, I want to thank you for your service.  I know that

8     it's not easy to come down here and to give up three days of

9     your life to perform your civic duty as jurors.  So I

10    appreciate your time, and I want to thank you for that.

11           And I also know that it's not easy to sit in judgment

12    of another human being.  As jurors, you wield tremendous power.

13    The power to condemn a person by way of conviction.

14           MS. SILVA:  Objection, Your Honor.  This is improper

15    argument.

16           THE COURT:  Pardon me?

17           MS. SILVA:  Objection.  This is improper argument.

18    He is talking about punishment.

19           MR. GAFFNEY:  I'm not talking about -- I'm talking

20    about condemning him through a conviction.

21           THE COURT:  I don't understand your objection.  You

22    are talking about perjury?  Is that what you are said?

23           MS. SILVA:  No.  He was talking about punishment,

24    Your Honor.

25           MR. GAFFNEY:  What I said was that they have the

Defendant's Closing Argument

1  power to condemn him by convicting him.

2          THE COURT:  Yeah.  And we aren't there yet.  Go

3  ahead.

4          MR. GAFFNEY:  And with that power that you have as

5  jurors comes great responsibility.  I know you probably heard

6  that phrase before, and nowhere would it be more applicable

7  than here today.

8          You have to carefully analyze all of the evidence in

9  this case and find beyond a reasonable doubt that Mr. Barnes

10  actually committed the crime that he's been accused of.

11          Now, Mr. Barnes, he's a pimp.  We've never disputed

12  that.  We have never tried to run from that fact.  However,

13  just because he's been involved in the prostitution of adults

14  does not mean that he's involved in the prostitution of minors.

15          You have to consider this issue very, very carefully

16  and draw this distinction.  Because with all the evidence that

17  you've seen, it's very easy to say, "A pimp is a pimp, so he

18  must have done it."  But that is not what our system of justice

19  demands.

20          Our system of justice demands that you look at each

21  piece of evidence, consider it very carefully, and then also

22  look at each count and determine whether the government has

23  proved beyond a reasonable doubt that he has committed each

24  element of the each offense.  And you have the jury

25  instructions you can refer to for that.

Defendant's Closing Argument

1      It's important to realize that this trial is not

2  about whether you agree with Mr. Barnes' lifestyle.  It's not

3  about whether you find him to be a likable person or whether he

4  facilitated other acts of prostitution.

5      The only thing that matters in this trial is whether

6  Mr. Barnes transported Jasmin from Nevada to California for the

7  purpose of prostitution, and whether he caused a sexually

8  explicit photograph of her to be posted online.  That's what

9  this trial is about.

10      The government has introduced all kinds of evidence

11  about his prostitution-related activities.  But you need to ask

12  yourself, "How much of that evidence actually proves that he

13  was prostituting minors?"

14      The government has introduced a bunch of pictures

15  from his Facebook page.  They show women in the nude with their

16  butts up in the air.  Yet the government has not alleged that

17  any of those pictures depict a minor.

18      The government has introduced a bunch of rap lyrics

19  that Mr. Barnes wrote.  And while you may find those lyrics

20  distasteful, there is nothing in them that can be construed as

21  his intent to prostitute a minor as opposed to an adult.

22      And along the same lines, the government introduced a

23  bunch of comments from his Facebook page.  And none of those

24  comments are direct evidence of his intent to prostitute

25  minors.

Defendant's Closing Argument

1          The one conversation the government did introduce

2     where he's talking to a 15 year old quickly devolved into an

3     argument.  And you didn't get to see that yesterday when the

4     government was presenting that to you, but you're going have it

5     back in the deliberation room.

6          I urge you to take a look at that conversation --

7     that's Government Exhibit 18 -- and determine for yourself

8     whether Mr. Barnes was trying to recruit that person.

9          You need to carefully consider Jury Instruction

10    No. 11.  That goes to whether you can consider all of this

11    outside evidence for the limited purpose for which it's been

12    introduced.

13         It cannot be considered as evidence of his guilt of

14    the crimes he's been accused of here.  And as I stated in my

15    opening, the government's case rests primarily, almost

16    exclusively on the testimony of two witnesses.  That is Jasmin

17    Madison and Amber Marquardt.

18         Let's start with Jasmin.  Jasmin, by all accounts, is

19    a very troubled girl.  I think we can all see that.  But the

20    totality of her inconsistencies about what happened render it

21    impossible for you to find guilt beyond a reasonable doubt in

22    this case.

23         She claimed that she was in California with the

24    defendant for two weeks.  And I know that I kept harping on the

25    time line.  The reason I was doing that is because it's

Defendant's Closing Argument

1  important.

2          The time line that she gave, back in 2013, right

3  after these events transpired, was that she was with the

4  defendants for two weeks.  She told that to Detective Leung

5  back in 2013.  She testified to it under oath back in 2013.

6  And you heard her say it on the stand here three years later.

7  And that statement that she was there for two weeks is

8  demonstrably untrue.

9          We know from the evidence that she could not have

10  been in California for more than four or five days.  And my

11  point is that if she has this fixed false belief about that

12  time line so soon after it happened, then that lack of lucid

13  thought, that lack of recognition of reality is going to spill

14  over into other aspects of her life, such as who she was with,

15  where she was, when she was with these people.

16          And the government wants you to chalk up that

17  discrepancy to human nature.  We as humans, we're flawed.  We

18  make mistakes.  And maybe you could accept that if not for all

19  of her other inconsistencies.

20          If you recall her account of how she met Jasmin --

21  excuse me.  Jasmin's account of how she met Amber was she was

22  walking along Boulder Highway, and Jasmin points out an

23  undercover cop to Amber.  And Jasmin testified that Amber was

24  grateful that she pointed out that undercover cop.  She

25  actually said she remembered Amber being grateful.

Defendant's Closing Argument

1          I would submit to you that event never happened.

2    Jasmin either fabricated it in her mind or she's attributing

3    events that happened to somebody else to Amber.

4          Jasmin also testified she could not remember the name

5    of the pimp that she worked for before meeting Amber and Daniel

6    and then after she departed their company.  His name was

7    Maserati.  And it's amazing that she supposedly has these clear

8    recollections of what happened with Amber and Daniel, between

9    these five and six day where is they were supposedly together,

10   yet she cannot remember the name of the pimp that she was with

11   in spring of 2013 all the way through the summer while he's

12   abusing her.

13         And the government gives you this broad time line

14   from April to August of 2013.  It's important to remember the

15   last contact she had with Daniel and Amber was on May 4th.

16   May 5th she gets arrested.  She's not working or associated

17   with Daniel and Amber.  She gets arrested again in August.  At

18   that time, she's working for a completely different pimp.

19         So I would submit to you that Jasmin has attributed

20   things that's happened to her with Maserati to Amber and

21   Daniel.  He's the one who gave her the rules.  He's the one who

22   tells her, "You have to call me Daddy."  He's the one who tells

23   her, "You have to give all your money to your pimp."

24         If you recall, Amber testified that she did not have

25   to give Jasmin any rules.  Because when Jasmin came to her, she

Defendant's Closing Argument

1   believed that she was already an experienced prostitute.  She

2   already knew how to conduct herself.  She didn't need to be

3   told how to do so.

4          Jasmin also claims that she had a clear recollection

5   of telling Amber and Daniel that she was 16.  And you heard

6   Amber testify that Jasmin never told her how old she was.  She

7   was absolutely adamant about that fact.

8          There was nothing about Jasmin's appearance, there

9   was nothing about her conversations, there was nothing about

10  her demeanor that led her to believe that she was a minor.  And

11  you heard her testify that had she learned Jasmin was a minor,

12  she would have terminated their relationship immediately.

13         And this particular piece of evidence --

14  information -- excuse me -- is critical to your analysis of the

15  jury instructions.  Because whether Mr. Barnes knew Jasmin was

16  18 is an element as to Counts 1 and 2.  So when you go back and

17  you look at Jury Instruction No. 15, please think about that.

18         I would submit to you that if Amber could not tell

19  Jasmin was 15 years old, then neither could Mr. Barnes.

20         Additionally, you are going to have two pictures with

21  you back in the deliberation room.  Those are Defense Exhibit

22  No. 510S as well as Government Exhibit 17B.  And on 17B, you

23  have to look at page 10 of 19.  Look at those photos when you

24  are in the deliberation room and decide for yourself whether

25  Daniel Barnes should have known that Jasmin was a minor.

Defendant's Closing Argument

1        Now, you may ask yourself, "Why would Jasmin make all

2   of this stuff up?"  I can't answer that.  I don't know.  I

3   don't know if she was confusing Daniel with Maserati.  I don't

4   know if she's trying to protect Maserati.  I don't know.

5        But given all of her inconsistencies, I would submit

6   that you can't take the word of Jasmin on anything she said

7   about what occurred to her in April and May of 2013.

8        Let's talk about Amber.  Amber is a long-time

9   prostitute, a double ex-felon.  She's a liar.  She's a pimp,

10   and she's an opportunist.  She actually sat there and told you

11   she wanted to testify because it was the right thing to do.

12        Well, she didn't think it was the right thing to do

13   until after about a year of sitting in federal custody.  And

14   during that time, she's proclaiming her innocence.  She's

15   writing letters indicating that she's been wrongfully accused.

16   That Jasmin is lying.  Jasmin was never with her and Daniel.

17   Jasmin never went to California.  She never stayed in any of

18   these hotels.  Jasmin never handed Daniel money, and that they

19   had never pimped her out.

20        She also indicated in her letter that her attorney

21   was putting pressure on her to back up Jasmin's lies.

22        MS. SILVA:  Objection, Your Honor.  These are facts

23   not in evidence.

24        MR. GAFFNEY:  These are all in evidence.

25        THE COURT:  What fact is not in evidence?

Defendant's Closing Argument

1              MS. SILVA:  He did not move any letters into

2    evidence, Your Honor.  There's no facts in evidence.

3              MR. GAFFNEY:  She testified to what was in the

4    letters.

5              THE COURT:  Well, it's final argument.  Go ahead.

6              MR. GAFFNEY:  Thank you.

7              Well, after being pressured by her attorney, guess

8    what?  She succumbs to that pressure, because she changed her

9    tune about a month before she entered into her agreement with

10   the government.  A deal that would potentially take two 10 to

11   life sentences off of the table for her.

12             And I don't know about you, but I found it shocking

13   that she would sit up there and play coy about not knowing the

14   details of her plea agreement.  That makes zero sense.  She

15   knows every last possible benefit that she is entitled to under

16   that agreement.

17             She also knows that the only way she's going to

18   receive those benefits is if she testifies to a version of

19   events that the government agrees with.

20             Has she been promised a specific sentence by the

21   government?  No.  But if the government likes what she has to

22   say, they have the sole discretion to ask Judge Mahan to give

23   her a sentence underneath that 10 year minimum.

24             What more incentive does she need to say whatever she

25   needs to say to make that happen?  The motive and incentive for

Defendant's Closing Argument

1    her to lie could not be more clear.  And that's why the law

2    requires you to examine her testimony with great caution.

3          Look at Jury Instruction No. 12.  The law mandates

4    that you look on her testimony with suspicion, because

5    condemning a man based on false testimony is a miscarriage of

6    justice that needs to be avoided at all costs.

7          And last but not least, in regards to Amber, she sat

8    up there, and she gave you her best sob story about she -- how

9    she came back to California in order to rescue her sister from

10   Daniel.  And her sister told you essentially the same story.

11         And that proposition is absolutely absurd, and it's

12   directly undermined by the fact that Amber facilitated the very

13   prostitution she claims she was trying to stop.  She sat up

14   there, and she lied to you.  And that's why you can't trust

15   anything that she says.

16         Now, you may be thinking, "You know, Mr. Gaffney, you

17   basically want me to believe Amber about certain things but not

18   about others.  That doesn't make -- that doesn't make sense."

19         And I think the answer to that conundrum is that you

20   simply cannot believe anything that these witnesses say.  Their

21   testimony essentially is a wash.  They cancelled each other

22   out.  And I would submit to you that in your everyday dealings,

23   you would not trust either one of these people to recommend a

24   good place to eat for lunch or where you would get a newspaper,

25   let alone convict a man based on their testimony.

Defendant's Closing Argument

1          In this case, the government has actually raised more

2    questions than it's answered.  It's like they have given you

3    the perimeter of a puzzle with the interior missing.  And

4    that's not good enough.  It's not good enough to say, "You

5    know, I think something happened.  I'm not quite sure what, but

6    I'm going to hold Mr. Barnes accountable for it."

7          Remember, he doesn't have the burden of proof in this

8    case.  That falls on the government.  The government has to

9    fill in the interior of the puzzle for you.  And in this case,

10   they failed to do that.

11         What they want to do here is to bootstrap a bunch of

12   loose facts and inconsistencies to conclude that because

13   Mr. Barnes is pimp, and he had some association with Jasmin and

14   Amber -- excuse me -- that he must being guilty.  And that

15   simply is not the law.  It's about what the government can

16   prove beyond a reasonable doubt, not what they can insinuate

17   about a person's lifestyle.

18         And this case presents a great example of where the

19   constitution comes alive.  Because we require, as a people,

20   that the government prove each and every element of the charge

21   beyond a reasonable doubt.  We don't just throw people in jail

22   because we don't like them.  We don't throw them in jail

23   because we find their Facebook posts distasteful.

24         And I sincerely appreciate that.  I sincerely

25   appreciate that we have due process, and I would hope that you

Defendant's Closing Argument

1  do as well.

2          And my final request is simply that you carefully

3  analyze all of the evidence in this case.  And don't let

4  reasonable doubt become a lesser standard just because you

5  don't like Mr. Barnes and what he's about.

6          So I would urge you to look at the evidence and apply

7  it to the law as it fits here.  And accordingly, I'd ask you to

8  return a verdict that is consistent with justice, and that

9  verdict would be not guilty as to all counts.  Thank you.

10          THE COURT:  All right.  Thank you.

11          How long do you anticipate you will be?

12          MS. SILVA:  About 10, 15 minutes at the most, Your

13  Honor.

14          THE COURT:  10 minutes.

15          MS. SILVA:  10 to 15 minutes at the most.

16          THE COURT:  All right.

17          MS. SILVA:  At the most.

18          THE COURT:  Remember the estimate you gave me

19  yesterday.

20          MS. SILVA:  Yes, Your Honor.

21          THE COURT:  Yeah, 15 minutes turned into 45; didn't

22  it?

23          MS. SILVA:  Yes, Your Honor.

24          THE COURT:  I'm going to hold you to this, 10 or 15.

25  You've got it.

Government's Rebuttal Argument

1    MS. SILVA:  Understood.

2              GOVERNMENT'S REBUTTAL ARGUMENT

3    MS. SILVA:  Good morning, ladies and gentlemen.

4         There is an old phrase that goes something along the

5    lines of "A play cast in hell has no angels."  This is exactly

6    what is before you today.  It is a play cast in hell, and it's

7    starring the defendant and the victims in this case.

8         Absolutely, Amber was a prostitute.  Absolutely,

9    Jasmin is a prostitute.  Absolutely, Brysco, Amber's sister,

10   worked as a prostitute.  They are no angels.

11        That doesn't mean that they are liars.  They are

12   victims, and they are victims at the hands of that man, the

13   defendant, who by admission of his own counsel is a pimp.  We

14   can all agree on that.  The evidence in this case speaks for

15   itself.

16        In fact, it doesn't matter what I think, or my

17   co-counsel thinks, or what defendant's counsel thinks, because

18   our arguments are not evidence.  But the evidence in this case

19   is clear, and the evidence speaks for itself.

20        You've heard from Amber that she was -- when she was

21   15 years old, she performed the first sex act for the

22   defendant, on behalf of the defendant, and received $100 for

23   giving a blow job.  You heard and you saw the posting on

24   myRedBook.com for Jasmin, 15 years old -- conveniently the same

25   age as Amber when she started -- for anal sex, bareback sex,

Government's Rebuttal Argument

1  meaning no condom sex, for $60.

2          And you heard Brysco testify to the fact that she had

3  sex with somebody for somewhere between 100 to $150 that went

4  to the defendant.  Those are the varying prices for these

5  girls' bodies pimped out by this man.  There is no mistake.

6  There is no lack of intent.  There is no absence of what is

7  really going on here.

8          There is an argument that you should pay no attention

9  to the man behind the curtain.  Pay no attention to the fact

10  that Amber testified that she thought Jasmin was over the age

11  of 18.  Let's talk about that for a minute.  Amber, who also

12  admitted she was high on drugs.  You got to see her, her

13  testimony and evaluate that.  You got to hear about how she was

14  a lost person at the age 15.  A lost soul, a runaway and put to

15  work on the streets.

16          You got to hear about how time and time again, she

17  sold her body for sex.  And that there were so many, she lost

18  count.  So think about that when you think about her judgment

19  back in 2013 evaluating Jasmin.

20          Jasmin, who you got to see for about an hour

21  yesterday, give or take a few minutes, and let's compare those

22  two.  Jasmin, 18 years old, young.  Got on that stand.  Was

23  rocking back and forth, slouching, rolling her eyes, consistent

24  with that of a teenager.  Consistent with that of somebody who

25  is immature.

1        Compare that to Amber.  30 years old, clean, put

2   together, composed, well-spoken, and admitting to her lies.

3   She admitted that she wrote letters that said, "Yeah, I'm

4   innocent.  We're innocent.  We're innocent," because she was

5   doing anything she could to get her and her pimp out of

6   custody.

7        Defense counsel wants you to say you shouldn't

8   believe anything she had to say, because she would say anything

9   the government wants her to say to get a better sentence.

10  Except you also heard her say, "I thought Jasmin was over the

11  age of 18."  If she was going to testify to anything we wanted

12  to her to say, is that consistent with that?

13       Ladies and gentlemen, I submit to you that is simply

14  not.  You can evaluate Amber's testimony for yourselves.  But

15  it's clear that back between April and May of 2013, Amber, the

16  defendant, and the victim in this case went from Nevada to

17  California to commit acts of prostitution.  To sell their

18  bodies and to give the proceeds of that to the defendant.

19       And the defendant would then use those proceeds to

20  further his venture, to continue his work as a pimp, to get

21  hotel rooms, food, shoes, whatever it might be to fit his

22  lifestyle.  To fit the lifestyle of a man who sits in a car and

23  waits for women to go sell their bodies for his benefit.

24  That's the evidence in this case.

25       We know there's an agreement, because you heard it

Government's Rebuttal Argument

1   from Amber, and you can see it in the evidence.  You know what

2   happened, because you can read the text messages that came out

3   that were sent between Jasmin and the defendant.

4           There is no evidence or denial that those text

5   messages took place, that they were exchanged, and they are

6   quite clear.  "Daddy," we know what that means.  More

7   importantly, there's a text message from the defendant to

8   Jasmin that says, "Let's get hoe'in."

9           Is there really a lack of mistake or a lack of intent

10  as to what was going on here?  Ladies and gentlemen, there is

11  simply not.  The evidence again speaks for itself.

12          The defendant is charged in Count 1 with the

13  conspiracy to commit sex trafficking.  And when you take that

14  instruction back with you, you'll see it's for JM and for

15  others.  Which is why you'll have that evidence to take a look

16  at in terms of the Facebook, with the defendant attempting to

17  recruit other victims to be sex traffickers.  I mean, to be

18  victims of his sex trafficking.

19          Again, Erica Johnson said she was 15 years old.  15

20  seems to be a popular number for this defendant, who claims he

21  had no idea that Jasmin was a minor.  This maybe is a mistake.

22  Again, look at all the evidence and evaluate that when you go

23  back into the jury room.

24          Count 2 charging the defendant with sex trafficking,

25  which is the substantive count, meaning by himself he went out

Government's Rebuttal Argument

1    there and he put Jasmin Madison to work.

2           Count 3 is transportation.  The defendant transported

3    the victim from Nevada to California.  And then you can also

4    consider the fact that they went from California back to

5    Nevada.  And in each location, she was sex-trafficked.

6           We have proven that the victim was in fact under the

7    age of 18, not only through her own testimony but through that

8    birth certificate.

9           And finally, he's charged in Count 4 with a

10   conspiracy to sexually exploit a minor, production of child

11   pornography.  Like with Count 3, it does not matter that the

12   defendant claims to not know the victim was under the age of

13   18, which I submit to you simply -- excuse me -- which I submit

14   is simply not consistent with the evidence.

15          But it does not matter for Counts 3 and 4 that she

16   was under the age of 18.  It requires that the defendant

17   knowingly employed, used, persuaded, enticed, induced, or

18   coerced her to engage in sexually explicit conduct for the

19   purposes of producing that visual depiction.

20          So a visual depiction is a picture.  You heard the

21   testimony that Amber and the defendant went and picked her up

22   in that white Chevy Malibu and drove her back to a hotel room.

23   And then sometime later, they took those pictures of her.

24   Pictures that are clear, using your own two eyes, are sexually

25   explicit pictures.  15-year-old girl spreading her buttocks,

Government's Rebuttal Argument

1    15-year-old girl naked.  15 year old posed in a sexually
2    explicit way.
3           And they had reason to know it would be mailed or
4    transported across state lines, or in foreign commerce, or it
5    had been moved across state lines.  Again, ladies and
6    gentlemen, the evidence in this case is clear.  Not only was it
7    taken -- the pictures here taken in Nevada, it was taken on an
8    iPad.  An iPad that -- where is that manufactured?  Was that
9    manufactured outside the State of Nevada?
10          You can take a look at this iPad when you go back
11   there, and take a look at it.  Inspect it.  Does it make sense
12   to you that it was manufactured in Nevada?  The evidence on
13   that will speak for itself.
14          My myRedbook.com, it was posted on the Internet,
15   whereas my co-counsel indicated 3,352 people looked at image.
16   What does that mean?  That mean it was published.  It was
17   produced.  It was repeatedly viewed over and over and over
18   again.  A 15-year-old's body -- naked body was viewed over and
19   over and over again.
20          There is simply no evidence in this case that the
21   defendant was careless.  There is simply no evidence in this
22   case that the defendant was unaware of what he was doing.
23   Admittedly, the defendant was a pimp.  There is mere argument
24   that he did not know that the victim was under the age of 18.
25          Despite what I've already talked to you about,

Government's Rebuttal Argument

1   comparing Amber and Jasmin's testimony and their demeanor, the

2   law also allows you to consider reckless disregard.  Is it

3   reckless that the defendant was recruiting girls, not asking

4   how old they were, not verifying their age, knowing that she

5   didn't have an ID, and then putting them to work on the

6   streets?  And then taking their picture and putting them on the

7   Internet?

8        That is the definition of reckless disregard.  He

9   recklessly and intentionally prostituted Jasmin Madison.  He

10  also knowingly, and as part of the culture, just didn't ask.

11  Much like Amber, just don't ask.  Ignorance is bliss.

12  Ignorance, in this case of Daniel Barnes, is money.

13       At the beginning of jury selection, when the Judge --

14  when we were first picking a jury, the Judge told you "Our jury

15  system calls for an impartial jury, meaning you can't know the

16  defendant."  And that makes sense, because if you knew the

17  defendant or knew the facts of this case, you wouldn't -- you

18  potentially could not be impartial, and you certainly couldn't

19  be a juror, because then you would be a witness to this case.

20  It makes sense that you would not know him and would not know

21  the facts of this case.

22       It also makes sense that our burden is beyond a

23  reasonable doubt.  When you go back into the jury room, you'll

24  have the reasonable doubt instruction with you.

25       And I always think it's important to talk about this,

Government's Rebuttal Argument

1   because as the Judge read to you earlier, reasonable doubt is

2   proof that leaves you firmly convinced a defendant is guilty.

3   It is not required that the government prove guilt beyond all

4   possible doubt.

5           Because you are not a witness to this case, you, like

6   me or anyone else in this courtroom, who is not the defendant

7   or not a witness, will never know exactly what happened,

8   because we weren't there.

9           You have to use reason, which is based upon reason

10  and common sense and not based purely on speculation.  It may

11  arise from careful and impartial consideration of all the

12  evidence or from the lack of evidence.  If, after careful and

13  impartial consideration of all the evidence, you are not

14  convinced beyond a reasonable doubt that the defendant is

15  guilty, it's your duty to find him not guilty.

16          On the other hand, after careful consideration and

17  impartial consideration of all the evidence, you are convinced

18  beyond a reasonable doubt that the defendant is guilty, it's

19  your duty to find him guilty.

20          It's your duty to find this defendant guilty, because

21  the evidence in this case clearly demonstrates that he is

22  guilty for each and every count that's charged in the

23  superseding indictment.

24          It's not just the testimony of Amber and Jasmin, as

25  you were told when this case started by defense counsel.  It's

Government's Rebuttal Argument

1    all going to come down to them.

2              No.  It's their testimony together with the other

3    evidence that has been introduced.  The hotel records that show

4    Amber Marquardt checking into hotels and motels in California.

5    It's the room key that Jasmin had in her possession when she

6    was arrested back in May of 2013 for what hotel?  Arizona

7    Charlie's.  It's the condom she had on her person when she was

8    arrested back in May of 2013.

9              It's the GPS records that show that white Chevy

10   Malibu going from Las Vegas to California and back to Las

11   Vegas.  The white, four-door vehicle, the white Chevy that

12   Jasmin testified she was picked up in.  It's the car rental

13   receipts where they are buying these vehicles, together with

14   the Facebook posts by the defendant bragging about his

15   lifestyle, attempting to recruit other girls, attempting to

16   recruit other minors.

17             It's the text messages, disgusting, heart-racking

18   text messages about a young girl who's on her period but forced

19   to work the street and make money for this man.  It's the raps

20   where he's bragging about his lifestyle, "Livin' large on the

21   selling of women's bodies."

22             Ladies and gentlemen, when you carefully and

23   impartially consider all of that evidence, together with the

24   testimony of every witness that testified before you, I submit

25   there is no greater justice that could be done than to find the

Government's Rebuttal Argument

 1   defendant guilty on all four counts.  Thank you.

 2                THE COURT:  All right.  Thank you.

 3                All right.  We have reached the point in the trial

 4   where I have to excuse the two alternate jurors.  These are two

 5   people who paid attention throughout the trial, and I

 6   appreciate your participation.

 7                I'm going to ask you to leave your -- and I'm

 8   speaking now to Mr. Kehoe and Miss McCune.  You are our two

 9   alternates.  I'm going ask you to stay behind when I excuse the

10   jurors.  Give David a cell number where we can reach you in

11   case we have to call you in, because it's possible that

12   somebody could fall ill or whatever, and we have to bring you

13   in for deliberations.

14                So if you would do that.  Just stick around long

15   enough to give David your cell number, we can reach you, and

16   stay by the phone.  Also, you've heard all the evidence, so you

17   might be interested in the outcome.  And if you want, just tell

18   David to call me when you get a verdict, and he can give you

19   that, too.  All right?

20                All right.  The jurors may take with them to the jury

21   room all papers and other items which have been received as

22   evidence in this case.  You may request the bailiff or the law

23   clerk further information or instruction.

24                Officer Donald, come forward, please, and I will

25   swear you to take charge of the jury.

1          (Court security officer sworn.)

2               THE COURT:   Thank you, sir.   Show them out.

3          (Jury out 11:09 a.m.   Remainder of trial in prior

4     transcript.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              GENERAL INDEX

2                                                               Page

3     Government's Closing Argument                              18

4     Defendant's Closing Argument                               41

5     Government's Rebuttal Argument                             53

6

7

8

9                              --oOo--

10                   COURT REPORTER'S CERTIFICATE

11

12        I, KATHERINE EISMANN, Official Court Reporter, United

13   States District Court, District of Nevada, Las Vegas, Nevada,

14   certify that the foregoing is a correct transcript from the

15   record of proceedings in the above-entitled matter.

16

17   Date:  April 27, 2016.

18                              /s/ *Katherine Eismann*

19                            Katherine Eismann, CSR CRR RDR

20

21

22

23

24

25