LUCAS GAFFNEY, ESQ.
Nevada Bar No. 12373
ORONOZ, ERICSSON & GAFFNEY LLC
1050 Indigo Drive, Suite 120
Las Vegas, Nevada 89145
Telephone:  (702) 878-2889
Facsimile:  (702) 522-1542
luke@oronozlawyers.com
*Attorney for Daniel Barnes*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO: 2:13-cr-0423-JCM-GWF |
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM** |
| DANIEL BARNES, | |
| Defendant. | |

COMES NOW Defendant, DANIEL BARNES, by and through his attorney of record, LUCAS J. GAFFNEY, ESQ., and hereby submits this sentencing memorandum and the objections contained therein in connection with his sentencing presently scheduled for Thursday, August 4, 2016, at 10:00 a.m.

DATED this 28th, day of July, 2016.          ORONOZ, ERICSSON & GAFFNEY LLC

*/s/ Lucas Gaffney*
LUCAS J. GAFFNEY, ESQ.
Nevada Bar Number: 12373
1050 Indigo Drive, Suite 120
Las Vegas, NV 89145

1

**STATEMENT OF FACTS**

At trial, a jury returned a verdict finding the Defendant, Daniel Barnes (hereinafter "Barnes") guilty of one count of Conspiracy to Commit Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a)(1), § (b)(2), and § (c); and 18 U.S.C. § 1594(c); one count of Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a)(2) and § (b)(2); one count of Transportation of a Minor for Prostitution in violation of 18 U.S.C. § 2423(a) and § (e); and one count of Conspiracy to Commit Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a) and § (e).

On May 5, 2016, the United States Parole and Probation ("Probation") issued a Presentence Investigation Report ("PSR") for Barnes. Probation set Barnes' total offense level at 38. (PSR ¶ 22-44) In addition, Probation calculated Barnes' criminal history score at 18, placing him in a criminal history category of VI. Based on its findings, Probation recommended a sentence of 360 months.

Probation did not identify any factors that warranted a non-guideline sentence under 18 U.S.C. § 3553(a). However, Probation was not able to collect any personal information from Barnes due to his refusal to participate in an interview.

On June 16, 2016, Barnes submitted his objections to the PSR. Specifically, Barnes objected to Probation's application of a two-level enhancement under United States Sentencing Guideline (hereinafter "USSG") §2G1.3(b)(2)(B) based on a finding that Barnes unduly influenced J.M., a minor, to engage in prohibited sexual conduct.

Barnes also objected to Probation's application of a two-level enhancement under USSG 2G1.3(b)(3)(A) based on a finding that Barnes used a computer to persuade, induce, entice, coerce, or facilitate the transport of J.M. to engage in prohibited sexual conduct.

2

1    Barnes objected to Probation's application of a two-level enhancement under USSG

2    2G1.3(b)(4)(A) based on a finding that the offense involved the commission of a sex act or

3    sexual conduct.

4    Barnes also objected the Probation's calculation of his criminal history. Specifically,

5    Barnes asserted that the PSR over represented his criminal history under USSG § 4A1.3(b). The

6    offenses listed in paragraphs 47 (2 points), 49 (3 points), 50 (3 points), 51 (3 points), and 52 (2

7    points) should not have been included in calculating Barnes' criminal history score because the

8    convictions were remote in time to the instant offense. By subtracting the aforementioned

9    convictions, Mr. Barnes' total criminal history points are 5, which places him into a criminal

10    history category of III. Accordingly, Based on the above, Mr. Barnes' PSR should be modified

11    to reflect a total offense level of 34, which results in a sentencing range of 188-235 months.

12    On June 22, 2016, Probation issued an Addendum to the Presentence Investigation

13    Report that included its respective responses to Barnes' objections. Probation declined to

14    modify any of the calculations in Barnes' PSR.

15    Irrespective of Probation's position, Barnes submits that Probation applied the

16    aforementioned enhancements improperly. As such, Barnes' total offense level is not 38, but 34,

17    with a criminal history category of III, the United States Sentencing Guidelines call for a

18    sentence between 188-235 months. Additionally, for the reasons set forth below in regard to 18

19    U.S.C. § 3553(a), this Court should grant a variance/departure to fashion a sentence that is

20    sufficient, but not greater than necessary, a sentence of 180 months.

21    ///

22    ///

23    ///

24    ///

1

## ARGUMENTS IN MITIGATION OF SENTENCE

2

**A.**      **Standard of Proof**

3

As an initial matter, this Court must determine what standard of proof to apply to the

disputed sentencing enhancements.[1] Barnes submits that this Court must apply the clear and

convincing evidence standard, under which the Government is required to prove the disputed

enhancements are supported by facts that are substantially more likely than not to be true. As

discussed below, the disputed enhancements will have an extremely disproportionate effect on

Barnes' sentence relative to the offenses of his conviction. *See* United States v. Restrepo, 946

F.2d 654, 659 (9th Cir.1991). *Also see* United States v. Hopper, 177 F.3d 824, 833 (9th Cir.

1999).

The factors this Court should consider in determining which standard of proof to apply

were promulgated in United States v. Valensia, 222 F.3d 1173, 1182 (9th Cir. 2000), and are as

follows:

1)   Does the enhanced sentence fall within the maximum sentence for the crime alleged in
the indictment?

2)   Does the enhanced sentence negate the presumption of innocence or the prosecution's
burden of proof for the crime alleged in the indictment?

3)   Do the facts offered in support of the enhancement create new offenses requiring
separate punishment?

4)   Is the increase in sentence based on the extent of a conspiracy?

5)   Is the increase in the number of offense levels less than or equal to four?

6)   Is the length of the enhanced sentence more than double the length of the sentence
authorized by the initial sentencing guideline range in a case where the defendant would
otherwise have received a relatively short sentence?

1      Although the aforementioned factors must be considered by this Court, there is not a bright-

2  line rule for the disproportionate impact test. <u>United States v. Jordan</u>, 256 F.3d 922, 928 (9th

3  Cir. 2001). Instead, this Court must consider the "totality of the circumstances," without

4  considering any one factor as dispositive. <u>United States v. Valensia</u>, 222 F.3d 1173, 1182 (9th

5  Cir.2000),

6      A relevant example of applying the disproportionate impact test can be found in in <u>U.S.</u>

7  <u>v. Jordan</u>, where the defendant faced a nine-level aggregate increase from the initial guideline

8  sentence, which was derived from a five-level increase for firearm possession and a four-level

9  increase for abduction to facilitate escape. <u>Jordan</u>, 256 F.3d at 929. The court found that factors

10  one (1) through four (4) did not apply because the enhanced sentence fell within the maximum

11  sentence for the crime alleged in the indictment, the enhanced sentence did not negate the

12  presumption of innocence or the prosecution's burden of proof for the crime alleged in the

13  indictment, the facts offered in support of the enhancements did not create new offenses

14  requiring separate punishment, and the increase in sentence was not based on the extent of a

15  conspiracy. <u>Id</u>. However, in determining the appropriate standard, the court focused its attention

16  on the fifth factor where the court found that the nine-level increase constituted strong support

17  for the application of the clear-and-convincing evidence standard. <u>Id</u>. The court also focused on

18  the sixth factor where the court found that the length of the enhanced sentence more than

19  doubled the length of the initial guideline sentence, which was calculated looking at the base

20  offense level and criminal history score. <u>Id</u>. The court ultimately ruled that the increase created

21  an exceptional case requiring the application of the clear and convincing evidence standard. <u>Id</u>.

22      Here, because the enhanced sentence falls within the maximum sentence for the crime

23  alleged in the indictment, Barnes submits the first four Valensia factors to the Court without

24

1   conceding they do or do not apply. In doing so, Barnes respectfully requests the Court focus on

2   factors five and six.

3     Similar to <u>Jordan</u>, the Court should apply the clear and convincing standard based on the

4   fifth and sixth <u>Valensia</u> factors. Barnes' initial guideline sentence, calculated by the base

5   offense level of 30 in Count Group 1, and an offense level of 32 in Count Group 2, would result

6   in a total offense level of 34 under U.S.S.G. § 3D1.4. Considering Barnes' criminal history

7   score of VI, his properly calculated guideline sentence is 210-262 months.

8     The disputed sentencing enhancements result in a six-level increase, which is clearly not

9   less than or equal to a four-level increase. This strongly supports applying the clear and

10  convincing evidence standard.

11    Additionally, the disputed enhancements would significantly increase Barnes' sentence.

12  Should this Court follow the recommendation of Probation and the Government by sentencing

13  Barnes to 360 months, the difference between the low-end of the initial guideline range (210

14  months), and the requested guideline range (360 months), is not more than double (150

15  months). However, the sentence is still a significant increase. As such, Barnes would

16  respectfully request this Court find that this is an exceptional case that justifies the application

17  of the clear and convincing standard.

18    Given the above, Barnes submits that the six-level increase, which potentially adds 150

19  months to his sentence, creates an extremely disproportionate effect, which requires the Court to

20  apply the clear and convincing standard. <u>United States v. Mezas de Jesus</u>, 217 F.3d 638, 644

21  (9th Cir. 2000).

22  ///

23  ///

24

6

**B.    Two-Level Enhancement for Unduly Influencing a Minor to Engage in Prohibited Sexual Conduct (U.S.S.G. § 2G1.3 (b)(2)(B).**

Probation incorrectly applied a two-point enhancement under U.S.S.G. § 2G1.3 (b)(2)(B) for unduly influencing a minor to engage in prohibited sexual conduct. Specifically, paragraph 23 of the PSR indicated that Probation applied the enhancement because Barnes allegedly unduly influenced J.M., a minor, to engage in prohibited sexual conduct. According to the Application Notes for U.S.S.G. § 2G1.3 (b)(2)(B):

> In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior. The voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring. However, subsection (b)(2)(B) does not apply in a case in which the only "minor" (as defined in Application Note 1) involved in the offense is an undercover law enforcement officer. In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed

The plain meaning of undue influence is defined in the Guidelines as activity that compromise[s] the voluntariness of the minor's behavior. U.S.S.G. § 2G1.3 cmt. n.3(B). accord United States v. Smith, 719 F.3d 1120, 1125 (9th Cir. 2013) *see also* United States v. Patterson, 576 F.3d 431, 443 (7th Cir. 2009) ("[T]he defining characteristic of undue influence is that it involves a situation where the influence has succeeded an altering the behavior of the target." (internal quotation marks omitted). There is no evidence whatsoever that Barnes altered J.M.'s behavior.

Examples of Ninth Circuit cases where the enhancement was upheld are as follows:

In United States v. Brooks, 610 F.3cl 1186 (9th Cir. 2010) when the victims encountered defendants, they had no money, no job and, as runaways, nowhere to live. They were shown a large sum of money and told that if they worked for him they would travel, be paid, and have a good life. either of the girls had engaged in prostitution before meeting

1   defendants.  In upholding the district court's application of the § 2G1.3(b)(2)(B) the court

2   referred to United States v. Patterson, 576 F.3d 431, 443 (7th Cir.2009) where he application

3   of an undue influence enhancement where the defendant was forty-two and the victim was

4   fourteen; the victim had never worked in prostitution before receiving the defendant's

5   encouragement; and the victim was "destitute and penniless" when the defendant urged her to

6   travel with him for purposes of prostitution), cert. denied, 130 S.Ct. 1284, (2010).

7        In upholding the enhancement in United States v. Smith, 719 F.3d 1120 (9th Cir.

8   2013), the Ninth Circuit pointed out that Smith had preyed on the victim's vulnerability. The

9   defendant took steps aimed at making her dependent on him: knowing she was homeless and

10  lacking family support or financial resources, he invited her to move in with him, gave her a

11  job, and began a sexual relationship with her. The court found that these predatory acts

12  compromised the voluntariness of her ability to resist defendant's demands that she work as

13  a prostitute for him.

14       Barnes also recognizes that in United States v. Hornbuckle, the Ninth Circuit Court of

15  Appeals held that "a minor's prior, voluntary acts of prostitution do not preclude a finding that

16  she or he was unduly influenced to engage in subsequent acts of prostitution." United States v.

17  Hornbuckle, 784 F.3d 549, 557 (9th Cir. 2015). The issue was a matter of first impression for

18  the Hornbuckle court who had previously considered a similar issue in United States v. Brooks,

19  but found the facts in Hornbuckle distinguishable because the victims in Brooks had not

20  previously engaged in acts of prostitution prior to meeting the defendants. United States v.

21  Brooks, 610 F.3d 1186, 1199–200 (9th Cir. 2010).

22       In analyzing the underlying facts of the Hornbuckle case, the Ninth Circuit found that

23  the defendants exerted undue influence over the victims because the defendants displayed anger

24  and violence towards the victims to the extent that they were terrified to leave the defendants.

1 Hornbuckle, 784 F.3d at 556. Further, the Ninth Circuit found that the victims were "forced to

2 meet daily quotas, subjected to ongoing physical and verbal abuse, pressured to work when they

3 did not want to, and unable to leave due to fear and lack of resources. Id. Furthermore, the Ninth

4 Circuit found that the homeless victims depended on the defendants for food, clothing, money,

5 and housing. Based on the aforementioned conduct, the Ninth Circuit ruled that the record

6 supported the district court's conclusion that the defendants unduly influenced the victims to

7 engage in prostitution. Although the Hornbuckle court ruled that as a matter of law evidence of

8 the minor victim's willingness to engage in sex acts alone was insufficient to compel reversal

9 where the record would otherwise support the district court's factual finding of undue influence,

10 this Court can, and should, still consider J.M.'s willingness to engage in prostitution when

11 conducting its fact-based inquiry. Hornbuckle, 784 F.3d at 556.

12        Here, although there is a rebuttable presumption that U.S.S.G. § 2G1.3(b)(2)(B) applies

13 due to the age difference between J.M. and Barnes, the record does not present clear and

14 convincing evidence that Barnes exerted undue influence over J.M. to engage in acts of

15 prostitution.

16        In closely considering the facts of this case, the type of conduct that constituted undue

17 influence as discussed in the Hornbuckle case is absent. J.M. never testified or accused Barnes

18 of forcing her to meet daily quotas, J.M. never testified that she had been subjected to ongoing

19 physical or verbal abuse, nor did J.M. testify that she was unable to leave Barnes' employ due to

20 fear and lack of resources.

21        Additionally, J.M. testified that she had worked as a prostitute prior to meeting Barnes

22 and the co-defendant Amber Marquardt (hereinafter "Marquardt"). See Trial Transcript Day 2,

23 pages 161-162. Specifically, J.M. testified that prior to meeting Barnes and Marquardt, she

24 worked as a prostitute for a pimp named Maserati for several months during the spring of 2013.

1   Id. J.M. also admitted to working as a prostitute soon after departing Marquardt and Barnes'

2   company. J.M. further testified that Maserati gave her the rules to comply with while working

3   as a prostitute. Id. at 162. Although J.M. testified that Barnes and Marquardt also gave her the

4   same rules as Maserati, Marquardt's conflicting testimony was that she and Barnes never gave

5   J.M. rules to follow because they believed she was already an experienced prostitute. Id. at

6   162, 220, 248. Lastly, J.M. testified that she freely left Barnes and Marquardt because she no

7   longer wanted to work as a prostitute. Id. at 172.

8          Based on the foregoing, the Court should find that the record is devoid of clear and

9   convincing evidence that Barnes' influence over J.M. compromised the voluntariness of her

10  behavior. Although Barnes was ten (10) years older than J.M. at the time the offense occurred,

11  he has rebutted the presumption that subsection (b)(2)(B) applies. As such, Barnes objects to

12  the application of this enhancement.

13         Additionally, this enhancement amounts to double counting. The Sentencing

14  Commission understands double counting and expressly forbids it where it is not intended.

15  United States v. Rosas, 615 F.3d 1058, 1065 (9th Cir. 2010) (quoting United States v. Reese, 2

16  F.3d 870, 894 5th Cir 1993), *see also* United States v. Vizcarra, 668 F.3d 516, 518 (7th Cir.

17  2012) under § 6 cmt. 4(b), double counting is the default rule. As the Guideline Manual

18  demonstrates, the Commission has in fact done this. Within any offense guideline, for

19  example, if a single offense characteristic subsection lists alternative adjustments, district

20  courts are to pick "only the one that best describes the conduct § 1B1.1 cmt. 4(B). The

21  Guidelines Manual also spells out numerous instances in which a particular provision should

22  not be applied to the same conduct as another provision. *See* Vizcarra, 668 F.3d at 521.

23  Impermissible double counting occurs when a court applies an enhancement for a necessary

24  element of the underlying conviction. *see* United States v. Smith, 719 F.3d 1120, 1123-25 (9th

Circuit 2013). Under the circumstances application of the enhancement amount to double

counting for all the counts of conviction. Additionally, the enhancement though recommended

by Probation was not applied for Marquardt. In fact, the government did not even request this

enhancement for Marquardt. [*See* Doc. # 96.] Accordingly, if the government requests the

enhancement for Barnes, it is in retaliation for him going to trial. A criminal defendant may

not be subjected to more severe punishment for asserting his right to stand trial. United States

v. Medina-Cervantes, 690 F.2d 715, 716 (9th Cir.1982); United States v. Stockwell, 472 F.2d

1186, 1187 (9th Cir. 1973).

**C.      Two-level Enhancement for Commission of a Sex Act (U.S.S.G. § 2G1.3(b)(4)(A).**

Barnes objects to the two-level increase under U.S.S.G. § 2G1.3(b)(4)(A), as provided in

¶ 25 of his revised PSR. Specifically, Probation applied the enhancement because the offense

allegedly involved the commission of a sex act or sexual contact. The respective U.S.S.G.

Application Notes indicate that "sexual act" has the meaning given that term in 18 U.S.C. §

2246(2), and that "sexual contact" has the meaning given that term in 18 U.S.C. § 2246(3).[2]

Under the aforementioned subsections, the terms "sex act" and "sexual contact" have very

---

[2] The relevant portions of 18 U.S.C. § 2246(2) and (3) provide:

**(2)** the term "sexual act" means—
  **(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
  **(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
  **(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
  **(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;
**(3)** the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

1    specific definitions. Although J.M. admitted to engaging "acts of prostitution," she did not

2    provide any details of the specific acts that would meet the definitions provided under the

3    respective subsections. As such, the court should find this enhancement cannot apply.

4           Barnes acknowledges that in United States v. Basa, the Ninth Circuit found that the

5    enhancement under § 2G1.3(b)(4)(A) did not require that a sex act with a child actually occur.

6    United States v. Basa, 817 F.3d 645, 650 (9th Cir. 2016). However, the Basa Court's ruling was

7    premised on the theory that a defendant can still be in violation of § 1591(a)(1) if he or she

8    intended to have a child commit a sex act. As such, the instant case is distinguishable because in

9    Basa, it was clear the defendant had facilitated meetings between the child and clients for the

10   clear purpose of committing a sex act, or that the defendant had facilitated the meetings with the

11   clear intent that the client would engage in sex acts with a child. Here, the phrase "acts of

12   prostitution," which was never defined for the jury, covers a broad range of conduct that does

13   not necessarily include the acts listed in 18 U.S.C. § 2246(2) and (3). Thus, there is no evidence

14   that the parties' references to "acts of prostitution" throughout trial consisted of the specific

15   conduct outlined in 18 U.S.C. § 2246(2) and (3). Accordingly, Mr. Barnes objects to the

16   application of this enhancement as there is not clear and convincing evidence to support it.

17          Additionally, if the Court were to apply this enhancement, it would constitute

18   impermissible double counting because Barnes alleged facilitation of the "acts of prostitution"

19   is conduct that is covered within the elements of § 1591(a)(1). "Impermissible double counting

20   occurs when one part of the Guidelines is applied to increase a defendant's punishment on

21   account of a kind of harm that has already been fully accounted for by application of another

22   part of the Guidelines." United States v. Nagra, 147 F.3d 875, 883 (9th Cir.1998) (internal

23   quotation marks omitted); see also United States v. Holt, 510 F.3d 1007, 1011 (9th Cir. 2007);

24   United States v. Smith, 719 F.3d 1120, 1123-25 (9th Circuit 2013). Lastly, the enhancement,

though recommended by Probation, was not applied for Marquardt. In fact, the government did not even request this enhancement for Marquardt. [*See* Doc. # 96.] Accordingly, if the government requests the enhancement for Barnes, it is in retaliation for him going to trial.

**D.    Two-Level Enhancement for Use of a Computer (U.S.S.G. § 2G1.3(b)(3)(A).**

Barnes objects to the two-level increase under U.S.S.G. § 2G1.3(b)(3)(A), as provided in ¶ 24 of his revised PSR. Probation applied the enhancement because the offense allegedly involved the use of a computer to persuade, induce, entice, coerce, or facilitate the transport of J.M. to engage in prohibited sexual conduct.[3] The applicable U.S.S.G. commentary regarding the application of § 2G1.3(b)(3) provides:

> Application of Subsection (b)(3) — Subsection (b)(3) is intended to apply **only** to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor. Accordingly, the enhancement in subsection (b)(3) would not apply to the use of a computer or an interactive computer service to obtain airline tickets for the minor from an airline's Internet site.

Here, there is an absence of clear and convincing evidence adduced at trial to show that Barnes used a computer to persuade, induce, entice, coerce, or facilitate the transport of J.M. to engage in prohibited sexual conduct. According to J.M.'s testimony, her communication about traveling from Nevada to California, or vice versa, occurred during face-to-face conversations with the defendants. Accordingly, this Court should not impose a sentencing enhancement under U.S.S.G. § 2G1.3(b)(3)(A) because there is not clear and convincing evidence to support it.

If this Court does not apply the sentencing enhancements discussed above, his Adjusted Offense Level is 34.

---

[3] It is important to note that Probation did not apply the sentencing enhancement under subsection (b)(3)(B).

**D.      Criminal History Calculation.**

Probation calculated Barnes criminal history points at 16, establishing a Criminal History Category of VI, which results in a guideline range of 360 to Life.

Barnes objects to Probation's calculation of his criminal history score as indicated in his PSR because the scored-convictions over represents Barnes' criminal history under U.S.S.G. § 4A1.3(b). Specifically, the offenses listed in paragraphs 47 (2 points), 49 (3 points), 50 (3 points), 51 (3 points), and 52 (2 points) should not be included in calculating Barnes' criminal history score because the convictions are remote in time to the instant offense, over-represent the seriousness of the offenses, and the likelihood that he will commit further crimes. *See* United States v. Abbott, 30 F.3d 71, 72–73 (7th Cir. 1994).

Barnes acknowledges that the age of a prior conviction, standing alone, is a factor that is already fully accounted for by the Guidelines. *See* § 4A1.2(e)(1). However, this Court can consider the age of a prior conviction in conjunction with other factors, such as that the prior offense was a relatively moderate one for which Barnes received a lenient sentence, and that the conduct upon which some of the prior offenses was based occurred prior to the ten-year time limit under the Guidelines. *See* United States v. Sierra-Castillo, 405 F.3d 932, 939–40 (10th Cir. 2005).[4]

Under § 4A1.2(e)(1) of the Guidelines, any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

---

[4] A conviction that occurred ten years prior to the commencement of the instant offense which resulted in the imposition of a sentence less than one year and one month are excluded from criminal history calculations under § 4A1.2(e)(2).

14

By subtracting the convictions discussed below from Barnes' criminal history score, Barnes' total criminal history points are five (5), which places him into a criminal history category of III. As such, with a total offense level of 34, and a Criminal History Category of III, the resulting guideline range is 188-235 months.

### i. Paragraph 47 – Conviction for Possession of Controlled Substance.

Paragraph forty-seven (47) discusses Barnes' conviction for Possession of a Controlled Substance (felony), which initially resulted in the imposition of a diversionary program and an eighteen (18) month term of probation that began on February 26, 2002. Eventually, on January 20, 2004, the court imposed six (6) months of incarceration and four years of probation. Because this conviction did not exceed one year and one month it cannot be included in the calculation of Barnes' criminal history score under § 4A1.2(e)(1). Additionally, because the initial sentence was not imposed within ten years of the commencement of the instant offense the conviction cannot be included in the calculation of Barnes' criminal history score under § 4A1.2(e)(2). [5]

According to the PSR, the police arrested Barnes on February 14, 2002, when Barnes was only nineteen (19) years old. Additionally, the sentencing court elected to place Barnes into a diversionary program, and then ultimately imposed a six-month sentence and placed him on probation, all of which reflects the sentencing court's belief that this was not a relatively serious offense. Accordingly, including this specific conviction in the calculation of Barnes' criminal

---

[5] It is difficult to determine the precise day upon which the offenses in the instant case occurred. However, at trial, J.M.'s phone revealed that she was purportedly in communication with the defendants on or about April 30, 2013. Additionally, the Global Positioning Device installed in the white Malibu vehicle the defendants supposedly used arrived in Las Vegas on or about April 27, 2013.

history score substantially over-represents the seriousness of Mr. Barnes' criminal history and the likelihood that he will commit other crimes.

Probation applied two criminal history points for this conviction.

### ii.    Paragraph 49 – Possession of a Narcotic Controlled Substance.

Paragraph forty-nine (49) discusses Barnes' conviction for Possession of a Narcotic Controlled Substance (felony), which initially resulted in the court imposing seven (7) months in jail, and thirty-six (36) months of probation.

This offense occurred over ten years ago on October 7, 2002, when Mr. Barnes was only 19 years old. Additionally, on November 18, 2003, the court imposed seven (7) month term of incarceration, followed by thirty-six (36) months on probation. Ultimately, the court revoked Barnes' probation and sentenced him to two (2) years imprisonment. However, given the initial sentence it is apparent that the sentencing court did not find this conviction to be a relatively serious offense. Accordingly, including this specific conviction in the calculation of Barnes' criminal history score substantially over-represents the seriousness of Mr. Barnes' criminal history and the likelihood that he will commit other crimes.

Probation applied three criminal history points for this conviction.

### iii.    Paragraph 50 – Burglary in the First Degree & Paragraph 52 – Evading Arrest.

Paragraph fifty (50) discusses Barnes' conviction for Burglary in the First Degree (felony), which resulted in the court imposing a six (6) year term of incarceration. The offense conduct occurred on March 29, 2004, over 10 years ago when Barnes was only twenty-one (21) years old.

16

Paragraph fifty-one (51) discusses Barnes' conviction for Evading Arrest (felony). The offense conduct occurred on July 13, 2004, when Barnes was only 21 years old.

It should be noted that Barnes' resolved both of the above mentioned cases in a single negotiation that resulted in the court imposing a sic 6-year term of incarceration for the Burglary conviction, and a two-year term of incarceration for the Evading Arrest conviction to run concurrent with the Burglary conviction. Based on the length of the respective sentences it is arguable that the sentencing court did not find these convictions to be relatively serious offenses. Accordingly, including these convictions in Barnes' criminal history calculation over-represents the seriousness of Barnes' criminal history.

Probation applied three points for the Burglary conviction, and three points for the Evading Arrest conviction.


### iv.   Paragraph 52 – Hit and Run Driving

Paragraph fifty-two (52) discusses Barnes' conviction for a Hit and Run (misdemeanor) conviction, and a conviction for Driving with a Suspended/Revoked License (misdemeanor).

These offenses are misdemeanors that occurred almost ten years ago on December 12, 2006, when Barnes was only twenty-four (24) years old. The sentencing court imposed a term of 6 months of incarceration, along with a thirty-six (36) month term of probation. Given the sentence imposed, especially the grant of probation, it is apparent that the sentencing court did not find this conviction to be a relatively serious offense. Thus, including this conviction in calculating Mr. Barnes' criminal history score substantially over-represents the seriousness of Mr. Barnes' criminal history and the likelihood that he will commit other crimes.

///

///

17

**E.     Application of the Statutory Sentencing Factors Under 18 U.S.C. § 3553(a) Justify a Downward Departure from the Applicable Sentencing Guideline Range.**

Section 3553(a) requires district courts to impose sentences that are "sufficient, but not greater than necessary to achieve the enumerated purposes of sentencing: punishment deterrence, incapacitation and rehabilitation. Section 3553(a)(2) elaborates that the four purposes of sentencing are:

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)     to afford adequate deterrence to criminal conduct;
> (C)     to protect the public from further crimes of the defendant; and
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To fashion a sentence sufficient to achieve these statutory purposes, courts must consider several factors including: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed; 3) the kind of sentences available; 4) any pertinent policy statements; 5) the need to avoid unwarranted sentencing disparities among the defendants with similar conduct; and 6) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

Congress enacted the Section 3553(a) factors to correct the constitutional violations stemming from the mandatory Sentencing Guidelines, thereby rendering the guidelines "effectively advisory." United States v. Booker, 543 U.S. 220, 245 (2005). Although the applicable guidelines range of an offense is a proper place to begin a sentencing determination, courts may not uncritically apply the guidelines. United States v. Diaz-Argueta, 447 F.3d 1167, 1171 (9th Cir. 2006) (citing Booker, 543 U.S. 220, 245 (2005)). Courts must address the mandatory Section 3553(a) factors and employ departures and variances where appropriate to fashion a reasonable and just sentence. Id. The advisory guidelines range is but one factor to be

considered in sentencing and should not be accorded greater weight than the mandatory Section 3553(a) factors. United States v. Zavala, 443 F.3d 1165, 1170 (9th Cir. 2006). A court does not have a duty to address each Section 3553(a) factor independently, but it must show it considered the statutory factors to fashion a reasonable sentence, United States v. Know His Gun, 438 F.3d 913, 918 (9th Cir. 2006). Moreover, the court may reject a guideline "based solely on policy considerations, including disagreements with the guidelines" provided that it substantiates its reasons for deviation. Kimbrough v. United States, 552 U.S. 85 101, 205 (2007) (citing Rita v. United States, 551 U.S. 338, 351 (2007)); 18 U.S.C. § 3553(a)(5)(A).

In the instant case, there are several mitigating factors this Court should consider to ensure that the sentence imposed on Barnes is sufficient, but not greater than necessary to meet the statutory purposes of sentencing. By presiding over the trial and through Probation's investigation and report(s), this Court is well aware of the nature and circumstances of the offense, the kinds of sentences available, the need to avoid unwanted sentencing disparities, and the need to provide restitution.[6]

### i.    Daniel Barnes' Conduct is Not the Primary Focus of the Federal Law and the Associated Penalties.

While the charge against Barnes is referred to as "Sex Trafficking of a Minor," which sounds as the most ominous and egregious of charges, let us not be mistaken that this is a pimping case. It is a pimping case just like the thousands of pimping cases that come through state courts on a daily basis. The difference here was the line between California and Nevada – indeed, had this offense occurred solely in Nevada, and Barnes' not travelled back and forth to

---

[6] Unfortunately, due to Barnes refusal to interview with Probation, and his refusal to meet with counsel, it is presently unknown whether his personal history and characteristics warrant a downward departure.

1   California, this would not be a federal offense. That is not to minimize the seriousness of the

2   offense. It is, of course, an incredibly serious offense; however, it is not the "human trafficking"

3   that Congress was most concerned about in enacting the statute and its penalties. *See* H.R.

4   CONF. REP. 106-939, 89 ("Section 2 of the House bill also includes findings to the effect that

5   every year millions of people, predominantly women and children, are trafficked within or

6   across international borders; that many victims are trafficked into the international sex industry,

7   often through force, fraud, or coercion; that trafficking in persons is not limited to sex

8   trafficking, but often involves forced labor and other violations of human rights; that trafficking

9   is a growing transnational problem that is increasingly perpetrated by organized criminal

10   enterprises; that existing legislation and law enforcement in the United States and abroad are

11   inadequate to deter trafficking, bring traffickers to justice, and meet the safe reintegration needs

12   of trafficking victims; that in some countries, anti-trafficking efforts are hindered by official

13   indifference, corruption, and sometimes even official participation in  trafficking; that

14   trafficking in persons is a matter of pressing international concern, and that the United States

15   must work bilaterally and multilaterally to abolish trafficking and protect trafficking victims.")

16          Moreover, as the evidence at trial showed: J.M. first approached Marquardt, Barnes was

17   not out looking to find her. Trial Transcript, Day 2, page 240. Additionally, it is still in dispute

18   whether J.M. informed the defendants that she was in fact a minor. Although J.M. testified that

19   she told both Barnes and Marquardt she was 16 years old, according to Marquardt's testimony,

20   J.M. never told her how old she was. Id. at 241-243. In fact, Marquardt testified adamantly that

21   had she known J.M.'s true age, she would have terminated their relationship immediately. Id.

22   Marquardt also testified that there was nothing about J.M.'s visual appearance or demeanor that

23   would have caused her to believe she was a minor. Because Marquardt and Barnes allegedly

24

1  had contact with J.M. over the course of several days, it is reasonable to presume that

2  Marquardt's observations regarding J.M. can be imputed to Barnes.

3       Also, J.M. never testified that Barnes used force or threatened her in any way. She

4  allegedly decided to work for the defendants voluntarily, and left voluntarily without incident.

5  Even the Government must concede that Barnes' is not alleged to be a violent pimp who

6  regularly assaulted J.M. as a means of control as is often seen in these types of cases. In short,

7  Barnes individual conduct does not warrant a sentence greater than 180 months.

8       Moreover, a sentence of fifteen-years imprisonment will be a dramatic escalation in

9  punishment for Barnes, and adequately reflects the seriousness of the offense, promotes respect

10 for the law and provides adequate deterrence. One has to question what purpose would be

11 served for a sentence longer than fifteen years. Fifteen years – 180 months – is an incredibly

12 long period of time. Statistics from the United States Sentencing Commission reveal that the

13 average sentence in all federal offenses in fiscal year 2015 was 45 months; the average sentence

14 in sexual assault cases was 137 months; and, the average in child pornography cases was 137

15 months. U.S.S.C.'s 2014 Sourcebook of Federal Sentencing Statistics, Table 13, available at

16 http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-

17 sourcebooks/2014/Table13.pdf. This shows how dramatic – and incredibly severe – a sentence

18 of 180 months imprisonment would be.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

21

1

## **CONCLUSION**

2        Barnes respectfully requests that this Honorable Court, considering the Ninth Circuit

3  case law, the Guidelines, and all sentencing factors under 19 U.S.C. § 3553(a) pursuant to

4  Booker, sentence him to 180 months, which is consistent with the arguments presented above.

5  The requested sentence is "sufficient, but not greater than necessary" to further the statutory

6  purposes of sentencing in order to comply with federal sentencing mandates.

7

8  DATED this 28th, day of July, 2016.              ORONOZ, ERICSSON & GAFFNEY LLC

9                                                    _/s/ Lucas Gaffney_____
                                                    LUCAS J. GAFFNEY, ESQ.
10                                                   Nevada Bar Number: 12373
                                                    1050 Indigo Drive, Suite 120
11                                                   Las Vegas, NV 89145

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that I am an employee of the Oronoz, Ericsson &

Gaffney LLC and am a person of such age and discretion as to be competent to serve papers.

That on July 28, 2018, I served an electronic copy of the above and foregoing

SENTENCING MEMORANDUM by electronic service (ECF) to the person named below:

DANIEL G. BOGDEN
United States Attorney
CRISTINA D. SILVA
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, NV 89101
Counsel for United States

cc: Probation Officer: brian_blevins@nvp.uscourts.gov.

/s/     Lucas Gaffney, Esq.
Employee of the Oronoz, Ericsson & Gaffney LLC